STATE OF NORTH CAROLINA v. WILLIAM RONALD GRAY

No. 8A94

(Filed 6 October 1994)

1. **Evidence and Witnesses § 1706 (NCI4th)— homicide— autopsy photographs not excessive**

    The trial court did not abuse its discretion in the admission of three autopsy photographs of a murder victim when a photograph of the victim at the shooting scene and a photograph of the victim's chest showing the hole where the bullet entered the body had already been admitted and when there was no dispute as to the cause of death or who inflicted the fatal wound where each photograph related to material events and facts to which each identifying witness was testifying, and the testimony of each witness whose testimony the photographs illustrated related to different aspects of the case and served different purposes.

    **Am Jur 2d, Evidence §§ 961 et seq.**

    **Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

2. **Criminal Law § 648 (NCI4th)— motion to dismiss after State's evidence—waiver by introducing evidence**

    Defendant's assignment of error to the denial of his motion to dismiss at the conclusion of the State's case-in-chief was waived by defendant's presentation of evidence. Appellate Rule 10(b)(3).

    **Am Jur 2d, Trial § 1058.**

3. **Homicide § 232 (NCI4th)— first-degree murder—sufficiency of evidence**

    The evidence was sufficient to support defendant's conviction of first-degree murder based on premeditation and deliberation and failed to establish self-defense as a matter of law where it tended to show that after a minor shoving match, defendant pulled out his gun, pointed it at the victim twice, and then shot the victim at point blank range.

    **Am Jur 2d, Homicide §§ 425 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Britt, J., at

the 26 July 1993 Criminal Session of Superior Court, Columbus County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 13 September 1994.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Harold G. Pope for defendant-appellant.*

MEYER, Justice.

Defendant appeals from his conviction of first-degree murder in a noncapital trial and the mandatory life sentence that was imposed and brings forward three assignments of error. After a careful and thorough review of the transcript, the record, the exhibits, the briefs, and oral arguments of counsel, we find no error.

The State's evidence tended to show that on 15 November 1992 at approximately 5:15 p.m., Police Officer Johnny L. Starks, Sr., found the victim, Reginald Anderson, lying face up with a gunshot wound to the chest. Officer Starks had been directed to the scene at Progressive Women's Park in Fair Bluff by two witnesses to the shooting, Jonathan Bullock and Randy Evans, who had reported the incident to officers at the police station. Reginald Anderson was transported by ambulance to the Columbus County Hospital, where he was later pronounced dead. Anderson had been shot once in the chest, and the bullet had pierced his heart and right lung before lodging in his back. Based upon the statements of several witnesses at the scene, the investigation focused on defendant, and he was sought for questioning. Defendant turned himself in at the police station approximately an hour and a half after the shooting.

At trial, Jonathan Bullock, a friend of defendant and a cousin of the victim, testified that he saw defendant and Reginald Anderson along with several other people in the park and heard defendant and Anderson arguing over someone having urinated on Bullock's cousin's car. Bullock heard a gunshot and then saw Anderson run by the car in which he was sitting and fall to the ground.

Joe Bullock, III, Jonathan Bullock's cousin, testified that he had been a classmate of Anderson and had known Anderson all his life. He also testified that he believed he was related to defendant. Earlier in the day on 15 November 1992, he had played basketball with defendant and some others. Afterwards, the group went to the park. Anderson arrived at the park with Randy Evans. The group talked for

approximately two hours. During this time, defendant and two others were standing by Bullock's car. Then, defendant and the others began walking up the road away from the park. Bullock approached his car to leave the park and saw what he thought was urine on the tire. Reginald Anderson came over to the car to ask for a dollar, and Bullock told him about the urine. Anderson said it was "nothing but one of those down there," referring to defendant and others, and then Anderson called to the group.

Bullock then testified that defendant and Anderson became involved in an argument that escalated into a scuffle. Both men were pushing each other, but neither was knocked off his feet. As Anderson walked towards defendant, defendant pulled a gun from his coat pocket and told Anderson something to the effect of, "Back off, I'm going to burn you." Anderson, who was approximately an arm's distance from defendant, pushed the gun away and stepped towards defendant. Defendant then raised the gun again, and Bullock heard a shot. Bullock looked up and saw Anderson grab his chest, run, and then fall down. Defendant walked away from the scene. Bullock further testified that when he asked defendant why he had shot Anderson, defendant replied, "F--- the motherf-----. Now he know I got the juice."

The testimony of Randy Evans, Ned Wayne Taste, and Darren Bullock, also witnesses to the shooting, supported that of Joe Bullock, III. In addition, Randy Evans testified that a man named Craig, whom Evans described as a "big guy," stood between Anderson and defendant and told them "not to do that." Evans testified that defendant stepped around Craig and pushed Anderson. Evans also testified that when defendant pointed the gun at Anderson the second time, he cocked it and held the gun on Anderson for a second before firing. Evans also testified that defendant fired the gun when it appeared Anderson was going to step towards him and that Anderson's hands were down, but positioned as if he were going to shove defendant or put his hands up, when defendant shot him.

Defendant testified that he thought Anderson was going to hurt him or kill him. Evidence was presented that Anderson was six feet tall and weighed 243 pounds and that defendant weighed about seventy-five pounds less than Anderson. Defendant was seventeen at the time of the shooting, while Anderson was thirty or thirty-one years old. Defendant testified that, on the day of the shooting, Anderson had told him that he was "going to kick [defendant's] ass

today." Defendant also testified that he could not run away from Anderson because Anderson was "steady coming toward [him], pushing and stuff." Defendant denied saying he was going to "burn" Anderson and denied cocking the gun. Defendant contended that he told Anderson to "back off" and that he did not remember pulling the trigger.

Defendant testified that he had never seen Anderson "get violent" and did not know Anderson to have a reputation for violence. Further, defendant testified that Anderson never gave defendant reason to believe he was armed and that defendant became mad when Anderson pushed him.

[1] Defendant argues that the trial court erred in allowing the State to introduce into evidence, over defendant's objection, cumulative and repetitious autopsy photographs.

The State introduced five photographs into evidence for illustrative purposes. State's Exhibit No. 1 was a photograph of Reginald Anderson taken at the scene of the shooting. Exhibit No. 2, a photograph of Anderson's chest area showing the bullet hole where the bullet entered the body, was taken at the hospital on the day of the shooting. Officer Starks identified Exhibit Nos. 1 and 2 and testified that the photographs showed the appearance of the victim and his chest wound. Defendant did not object to the admission of Exhibit Nos. 1 and 2.

State's Exhibit Nos. 5, 6, and 7 were 8x10 color photographs taken during the autopsy of Reginald Anderson. Dr. Brent Dwayne Hall, who performed the autopsy, testified as an expert in forensic pathology, and Exhibit Nos. 5, 6, and 7 were used to illustrate his testimony. Exhibit No. 5 was an identification photograph of the body, taken before the autopsy began. Exhibit No. 6, a distance photograph of the chest wound taken during the autopsy, was used by Dr. Hall to illustrate the location of the wound on the body. Exhibit No. 7, a close-up photograph of the wound specifically showing an abrasion collar around the wound, was used by Dr. Hall to illustrate that the chest wound was an entrance wound.

Defendant objected to the introduction of Exhibit Nos. 6 and 7 on the grounds that the photographs were repetitious of Exhibit No. 2. Defendant further contends that there was no dispute as to the cause of death or who inflicted the fatal wound, and therefore, Exhibit Nos. 6 and 7 had no probative value and were introduced for the sole

STATE v. GRAY

[337 N.C. 772 (1994)]

purpose of inflaming the jury. Defendant argues these photographs should have been excluded under Rule 403 of the North Carolina Rules of Evidence, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (1986).

The principles of law governing the admission of photographic evidence with inflammatory potential were set out by this Court in *State v. Hennis*, 323 N.C. 279, 283-85, 372 S.E.2d 523, 526-27 (1988), *quoted in State v. Robinson*, 327 N.C. 346, 356-57, 395 S.E.2d 402, 407-09 (1990). Whether photographic evidence is admissible under Rule 403 is within the sound discretion of the trial court. *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Generally, photographs are competent evidence to explain or illustrate anything that is competent for the witness to describe in words. *Id.* at 283, 372 S.E.2d at 526. Properly authenticated photographs of a homicide victim may be introduced into evidence if the trial court instructs the jury that their use is limited to illustrating the witnesses' testimony. *Id.* at 283-84, 372 S.E.2d at 526. Generally, the fact that a photograph is gruesome or gory does not render it inadmissible if it is otherwise competent. *State v. Wynne*, 329 N.C. 507, 517, 406 S.E.2d 812, 816 (1991). "Even where . . . the cause of death and identity of the victim are uncontroverted, photographs may be exhibited showing the condition of the body and its location when found." *Id.*

This Court has recognized that "when the use of photographs that have inflammatory potential is excessive or repetitious, the probative value of such evidence is eclipsed by its tendency to prejudice the jury." *Hennis*, 323 N.C. at 284, 372 S.E.2d at 526. However, the decision of whether photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs lies within the sound discretion of the trial court. *Id.* at 285, 372 S.E.2d at 526. Abuse of discretion occurs only where the trial court's ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.*

We find no abuse of discretion in the admission of the photographs in the case at bar. There is no evidence that the photographs

were used excessively or solely to arouse the passions of the jury. *State v. Murphy*, 321 N.C. 738, 365 S.E.2d 615 (1988). Instead, the record demonstrates that each photograph related to material events and facts to which each identifying witness was testifying. Further, the testimony of each witness whose testimony the photographs illustrated related to different aspects of the case and served different purposes. Therefore, we overrule this assignment of error.

**[2]** Defendant next assigns error to the trial court's denial of his motion to dismiss at the conclusion of the State's case-in-chief. However, this assignment of error was waived by defendant's presentation of evidence. Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure states:

> A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial. If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, his motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.

N.C. R. App. P. 10(b)(3). Accordingly, we overrule this assignment of error.

**[3]** Defendant's last assignment of error is to the overruling of his motion to dismiss at the close of all the evidence. He contends that the State's evidence failed to establish each element of murder in the first degree and that the evidence established self-defense as a matter of law.

In determining whether evidence is sufficient to survive a motion to dismiss, the evidence is considered in the light most favorable to the State. *State v. Mason*, 336 N.C. 595, 597, 144 S.E.2d 169, 169 (1994). The test for the sufficiency of the evidence in a criminal case is whether there is substantial evidence of every element of the offense charged and that defendant was the perpetrator so that any rational trier of fact could find beyond a reasonable doubt that the crime was committed and that defendant committed it. *State v. Thompson*, 306 N.C. 526, 532, 294 S.E.2d 314, 318 (1982). "Substantial evidence" is that amount of relevant evidence that a reasonable mind

might accept as adequate to support a conclusion. *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981).

There was substantial evidence here from which reasonable jurors could conclude that defendant committed first-degree murder. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Fleming*, 296 N.C. 559, 562, 251 S.E.2d 430, 432 (1979). The evidence elicited from the State's witnesses and from the defendant himself is sufficient to permit the jury to reasonably find that defendant, after premeditation and deliberation, killed Reginald Anderson. The record demonstrates that after a minor shoving match, defendant pulled out his gun, pointed it at Anderson twice, and then shot Anderson in the chest at point blank range. When viewed in the light most favorable to the State, this evidence is sufficient to support a conviction of first-degree murder.

Further, contrary to defendant's contention, the evidence is insufficient to establish self-defense as a matter of law. Perfect self-defense is justification for a homicide where the defendant establishes and the jury finds that:

"(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

"(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

"(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

"(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)). The evidence presented does not unequivocally establish that the killing was in self-defense. Therefore, we overrule this assignment of error.

In defendant's trial and in the imposition of the mandatory sentence of life imprisonment, we find no error.

NO ERROR.