STATE OF NORTH CAROLINA v. ALFRED WILLIAM RILEY, JR.

No. COA97-147

(Filed 6 January 1998)

## 1. Evidence and Witnesses § 945 (NCI4th)— statement by defendant—excited utterance

A murder defendant's statement, made while he was wrestling with the victim after the victim had hit defendant's brother over the head with a chair, that he wasn't going to let the victim go because the victim had a gun, if hearsay, was admissible under the excited utterance exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 803(2).

## 2. Evidence and Witnesses § 929 (NCI4th)— excited utterance—testimony by declarant not required

The applicability of the excited utterance exception to the hearsay rule does not depend on the declarant actually testifying in the trial in which the excited utterance is offered.

## 3. Criminal Law § 433 (NCI4th Rev.)— closing argument—comment on defendant's failure to testify—error not cured

The prosecutor's statement during closing argument in a murder trial that "In order to have self-defense, you got to get on the witness stand and you got to admit that you" constituted an improper comment on defendant's failure to testify. This error was not cured by the trial court's inclusion in the jury charge of an instruction on defendant's right not to testify, and the error was not harmless where the evidence of defendant's guilt was not overwhelming.

Appeal by defendant from judgments dated 23 February 1996 by Judge Robert L. Farmer in Alamance County Superior Court. Heard in the Court of Appeals 27 October 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General John H. Watters, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Benjamin Sendor, for the defendant appellant.*

GREENE, Judge.

Alfred William Riley, Jr. (Defendant) appeals convictions for first degree murder and assault with a deadly weapon inflicting serious injury.

On 24 November 1994, Defendant and his brother Anthony Lafontant (Lafontant) went to a crowded Burlington bar and dance club known as the Pac-Jam II Club (Club). Michael Angelo Faucette (Faucette) and Varnodia Tinnin (Tinnin) were wounded as a result of gunshots fired in the Club that night. Tinnin subsequently died of the wounds he had received.

Various witnesses testified that, at some point during the evening, Lafontant and Anthony Ray Hurdle (Hurdle) argued. Hurdle's half-brother, Tinnin, ended the argument by hitting Lafontant over the head with a chair. Lafontant fell to the floor, bleeding from a head wound. Gunshots were then heard in the Club. Either before or after the gunshots were heard, the lights in the Club flashed off for a few seconds.

A friend of Tinnin's testified that he saw Defendant firing a gun into the crowd, and that Defendant shot Tinnin as Defendant and Tinnin wrestled. Another friend of Tinnin's testified that after Lafontant fell to the floor, he saw Defendant standing over Tinnin firing gunshots at Tinnin. Hurdle stated that Defendant shot Tinnin after Tinnin hit Lafontant over the head with a chair.

Defendant did not testify. Michael Sharod Evans (Evans), a friend of Defendant, testified for the defense that after Tinnin hit Lafontant over the head with a chair, Defendant and Tinnin began wrestling. Evans testified that as he tried to separate Defendant and Tinnin, Defendant "kept repeating . . . that he wasn't going to let [Tinnin] go because [Tinnin] had that gun." This testimony, elicited on voir dire, was excluded by the trial court over defense counsel's objection that it fell under the "excited utterance" exception to the hearsay rule. Out of the jury's presence, the trial court stated its reasons for exclusion of Evans's testimony as follows:

> If you want that evidence, if you want that evidence in, you're going to put the defendant on the stand. That's the only way it's going to get in under the rules. I think you probably know what the rule is. There's no way you can get that evidence in through this witness. You have to let the defendant testify to it; and then

STATE v. RILEY

[128 N.C. App. 265 (1998)]

if you want to put this witness back on to corroborate his testi-
mony, then that's, that's fine.

Other witnesses testified that Tinnin had shown them a gun earlier
that night; however, no one else testified that Tinnin had a gun during
his struggle with Defendant.

A defense witness testified that he heard gunfire from more than
one gun at the time Faucette and Tinnin were shot. Another defense
witness testified that she heard several gunshots, some "loud," mak-
ing a "pow, pow, pow" noise, and others that were "softer," making a
"pop, pop, pop" noise.

Tinnin himself was still conscious when he arrived at the hospi-
tal. An emergency room nurse testified that she asked Tinnin who had
shot him. Tinnin responded "I don't know."

At the close of all the evidence, Defendant requested the trial
court to instruct the jury on defense of another. The trial court
refused.

During the State's closing argument, the following exchange
occurred before the jury:

[Prosecutor:] But they want you to think that there's some kind of
self-defense. In order to have self-defense, you got to get on the
witness stand and you got to admit that you . . . .

[Defense Counsel:] Objection to any further references to self-
defense as the Court is not going to charge on it. Also object to
this commentary on whether or not the defendant has chosen to
testify. That is improper. [The prosecutor] should know that.

COURT: Sustained as to latter part of it. As to self-defense,
motion denied. You may continue.

The court made no further curative instruction during the State's clos-
ing argument. The trial court did later include, in its jury charge, the
following instruction:

Now, during this trial, members of the jury, the defendant, Mr.
Riley, has not testified himself. The law of the State of North
Carolina gives him this right and privilege. This same law also
assures him that his decision not to testify creates no presump-
tion against him. Therefore, his not testifying during this trial is
not to influence your decision in any way in this case.

STATE v. RILEY

[128 N.C. App. 265 (1998)]

The jury found Defendant guilty of the first degree murder of Tinnin, and assault with a deadly weapon inflicting serious injury to Faucette. Defendant was sentenced to life imprisonment without parole for the murder of Tinnin, to be followed by a minimum of forty-two months and a maximum of sixty months imprisonment for the assault of Faucette.

---

The issues are whether: (I) the trial court improperly excluded defense witness testimony; and (II) the State's prosecutor improperly commented on Defendant's decision not to testify.

I

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1991). Hearsay is generally inadmissible at trial. N.C.G.S. § 8C-1, Rule 802. An "excited utterance," which is a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," however, is not excluded by the hearsay rule. N.C.G.S. § 8C-1, Rule 803(2). For a statement to qualify as an excited utterance, there must be "(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Maness*, 321 N.C. 454, 459, 364 S.E.2d 349, 351 (1988) (quoting *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985)).

[1] In this case, Evans's proffered testimony, that Defendant "kept repeating . . . that he wasn't going to let [Tinnin] go because [Tinnin] had that gun," was *not* offered to prove "the truth of the matter asserted" (*i.e.*: that Tinnin had a gun while Defendant and Tinnin were wrestling). Instead, defense counsel contended before the trial court that Evans's testimony was offered to show Defendant's "motivation in refusing . . . to let [Tinnin] go" (*i.e.*: that Defendant believed Tinnin had a gun while they were wrestling). As such, Evans's testimony was arguably not excludable as hearsay; however, even considering the statement as hearsay, the circumstances show that it would fall under the excited utterance exception to the rule. The evidence revealed that Defendant had just witnessed his brother fall to the floor bleeding after being hit over the head with a chair by Tinnin. In addition, Defendant was wrestling with Tinnin when the statement to Evans was made. These events were "sufficiently startling" to suspend reflective thought, and Defendant's comments occurred while

**STATE v. RILEY**

[128 N.C. App. 265 (1998)]

Defendant was under the stress of these events. Defendant's comments were therefore excited utterances within the meaning of Rule 803(2).

**[2]** During a voir dire discussion after the trial court sustained the State's objection to Evans's testimony, the court stated why it found the Defendant's excited utterance inadmissible.

> If you want that evidence, if you want that evidence in, *you're going to put the defendant on the stand.* That's the only way it's going to get in under the rules. I think you probably know what the rule is. There's no way you can get that evidence in through this witness. *You have to let the defendant testify to it*; and then if you want to put this witness back on to corroborate his testimony, then that's, that's fine.

(Emphasis added.) The trial court obviously believed that Defendant would have to take the stand and testify on his own behalf in order to have Evans's testimony as to Defendant's statements admitted into evidence. This was an erroneous belief. The applicability of the excited utterance exception to the hearsay rule does *not* depend on the declarant actually testifying in the trial where the excited utterance is offered. 2 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 216, at 85, n.344 (4th ed. 1993) [hereinafter 2 *Broun on Evidence*]; *see also* N.C.G.S. § 8C-1, Rule 803 (listing exceptions to the hearsay rule, including the excited utterance exception, which do not require declarant unavailability). This is so even if the declarant is the defendant in a criminal trial and exercises his constitutional right not to testify. 2 *Broun on Evidence* § 216, at 85, n.344.

## II

**[3]** "[A] criminal defendant may not be compelled to testify, and . . . 'any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent.'" *State v. Thompson*, 118 N.C. App. 33, 39, 454 S.E.2d 271, 275, *disc. review denied*, 340 N.C. 262, 456 S.E.2d 837 (1995) (quoting *State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994)). Our courts have consistently held that where the State comments on the defendant's failure to testify, "the error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness." *State v. Reid*, 334 N.C. 551, 556, 434 S.E.2d 193, 197 (1993) (citations omitted). The "subsequent inclusion in the jury charge of

an instruction on a defendant's right not to testify" does not, by itself, cure such comments. *Baymon*, 336 N.C. at 758, 446 S.E.2d at 6 (prosecutor stated, when discussing the number of times the victim had been sexually assaulted, "[the defendant's] not going to tell you"). If the trial court does not give a curative instruction to the jury immediately following prosecutor comments before the jury concerning the defendant's failure to testify, "the prejudicial effect of such an uncured, improper reference mandates the granting of a new trial," *Reid*, 334 N.C. at 556, 434 S.E.2d at 197, unless the State can show the error was harmless beyond a reasonable doubt, *Baymon*, 336 N.C. at 758, 446 S.E.2d at 6; N.C.G.S. § 15A-1443(b). If the State shows overwhelming evidence of the defendant's guilt, this may render such comments harmless beyond a reasonable doubt. *State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982).

In this case, the prosecuting attorney argued before the jury: "In order to have self-defense, you got to get on the witness stand and you got to admit that you . . . ." When defense counsel objected on two grounds to the comments of the prosecutor, the trial court's sole curative instruction was: "Sustained as to latter part of it." The trial court gave no further curative instruction at that time. Although the trial court later (after the closing arguments of counsel) included within the jury charge that the defendant had a right not to testify and that his failure to testify should not influence them, this instruction does not cure the error committed earlier (during the State's closing argument).

The State has not shown that this error was harmless beyond a reasonable doubt. Although there is testimony from several witnesses that Defendant fired the shots that injured Faucette and killed Tinnin, the Defendant's witnesses presented evidence tending to show that someone other than Defendant also fired shots during the struggle. In addition, Tinnin himself did not know who shot him. This evidence does not overwhelmingly show that Defendant is guilty of first degree murder. The prosecutor's comments concerning Defendant's failure to testify, not timely corrected by the trial court, therefore require a new trial.

Defendant has raised other arguments on appeal that are mooted by our grant of a new trial and we therefore do not address them. *See State v. Fearing*, 304 N.C. 499, 504-05, n.2, 284 S.E.2d 479, 483, n.2 (1981). *Cf. State v. Collins*, 334 N.C. 54, 63, 431 S.E.2d 188, 194 (1993)

**JONES v. CAPITOL BROADCASTING CO.**

[128 N.C. App. 271 (1998)]

(declining to address errors which are "unlikely" to arise again at the defendant's new trial).

New trial.

Chief Judge ARNOLD and Judge McGEE concur.