STATE OF NORTH CAROLINA v. ALFRED WILLIAM RILEY, JR.

No. COA99-207

(Filed 18 April 2000)

1. Homicide— first-degree murder—short-form indictment—sufficient

Defendant's motion for appropriate relief (MAR), based on the use of a short-form indictment under N.C.G.S. § 15-144 to charge him with first-degree murder, is denied because: (1) defendant was in a position on a previous appeal to raise the issues in the MAR but failed to do so, N.C.G.S. § 15A-1419(a)(3) and (b); and (2) our Supreme Court has held that the short-form indictment is adequate to charge first-degree murder.

2. Evidence— chain of events—not part of crime charged

The trial court did not abuse its discretion in a non-capital first-degree murder and assault with a deadly weapon inflicting serious injury case by admitting evidence that defendant told another person at the nightclub where the shootings occurred that he "had gotten in some trouble" earlier that evening at a nearby nightclub because: (1) the probative value of the evidence

outweighed any danger of unfair prejudice, N.C.G.S. § 8C-1, Rules 403 and 404(b); and (2) this evidence was not part of the crime charged, but pertained to the chain of events explaining the context, motive, and set-up of the crime.

### 3. Criminal Law— prosecutor's closing argument—evidence defendant brought a firearm—premeditation

The trial court did not abuse its discretion in a non-capital first-degree murder and assault with a deadly weapon inflicting serious injury case by overruling defendant's objections to statements made by the prosecutor during closing argument discussing the implications of evidence that defendant brought a firearm to the nightclub because the evidence of defendant's preparation for a possible encounter, however unexpected, is admissible evidence of premeditation.

### 4. Criminal Law— prosecutor's closing argument—characterization of defendant as "evil"—inferences supported by evidence

The trial court did not abuse its discretion in a non-capital first-degree murder and assault with a deadly weapon inflicting serious injury case by overruling defendant's objections to statements made by the prosecutor during closing argument, speculating on the contents of defendant's mind immediately after stating that defendant's thoughts were unknowable, because the prosecutor's characterization of defendant as "evil" was not inconsistent with the record, nor did the argument exceed the bounds permitted in final argument.

### 5. Criminal Law— prosecutor's closing argument—aider and abettor—inferences supported by evidence

The trial court did not abuse its discretion in a non-capital first-degree murder and assault with a deadly weapon inflicting serious injury case by overruling defendant's objections to statements made by the prosecutor during closing argument, concerning evidence that defendant's automobile was discovered behind his friend's house after the shooting at the nightclub to show the friend hid the car for defendant while helping him to escape, because: (1) the evidence supported a reasonable inference that the friend allowed defendant to hide his car behind her house before he left North Carolina; and (2) the trial court properly instructed the jury to consider the prosecutor's argument as a contention, not as evidence.

STATE v. RILEY

[137 N.C. App. 403 (2000)]

## 6. Criminal Law— requested jury instructions—verbatim not required

The trial court did not err in a non-capital first-degree murder and assault with a deadly weapon inflicting serious injury case by refusing to give the jury defendant's requested additional instruction on premeditation and deliberation because the trial court gave the pattern jury instruction, which viewed in its entirety encompassed the substance of defendant's request.

Judge GREENE dissenting.

Appeal by defendant from judgment entered 8 May 1998 by Judge Henry W. Hight, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 11 January 2000.

*Michael F. Easley, Attorney General, by Robert C. Montgomery, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

EDMUNDS, Judge.

Defendant Alfred William Riley, Jr., appeals his conviction of non-capital first-degree murder and assault with a deadly weapon inflicting serious injury. We find no error in his trial.

Defendant's convictions stem from a 24 November 1994 altercation between two sets of brothers at the Pac Jam II nightclub in Burlington. Jacqueline Johnson (Ms. Johnson) was at Pac Jam II that night along with the victim, Vernodia "Buck" Tinnin (Tinnin); Tinnin's brother, Anthony "Pooty" Hurdle (Hurdle); and Michael Faucette (Faucette). While there, Ms. Johnson began a conversation with defendant outside the club. Defendant told her that he "had gotten in some trouble" at the nearby All for One nightclub and that police were looking for him and his little brother, Anthony Lafontant (Lafontant). Defendant asked Ms. Johnson to tell the police that Lafontant was staying with her; in a subsequent conversation, he also asked her to put his gun in her car. She refused both requests. Later in the evening, but before the shooting that led to the instant murder charge, Ms. Johnson noticed defendant speaking with Officer Billy White of the Burlington Police Department.

A fight broke out between the victim's brother, Hurdle, and defendant's brother, Lafontant, between 2:15 and 2:30 a.m. inside Pac

Jam II. When Lafontant stepped on Hurdle's shoe, Hurdle asked Lafontant whether he was going to say "excuse me." Lafontant responded with a curse, and a shoving match ensued. Lafontant stepped back, reached into his pocket, and began to pull out something shiny. At that moment, Tinnin, the eventual victim, picked up a chair and hit Lafontant on the head. Defendant drew a semi-automatic pistol from his pants and began shooting while club patrons ran for the exit. Faucette was hit in the thigh. As defendant shot through the crowd at Faucette, Tinnin yelled and moved to the pool table, crawling, or squatting and running. Defendant stood over Tinnin and fired several shots down toward him, then rolled the victim over with his foot and said, "I got your ass." Apparently Tinnin was not immediately incapacitated by the shots, because he began to struggle with defendant, who held his pistol to Tinnin's head and pulled the trigger. The weapon did not fire, and Tinnin was taken to a hospital, where he died.

Dr. John D. Butts, Chief Medical Examiner of North Carolina, testified that Tinnin suffered two gunshot wounds. One bullet entered the left back, passed through the chest, and exited the middle part of the body. The second bullet entered and exited Tinnin's right leg. These wounds caused Tinnin's death.

Defendant was indicted for first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. On 23 February 1996, he was convicted of first-degree murder and assault with a deadly weapon inflicting serious injury. This Court granted defendant a new trial on both charges, *see State v. Riley*, 128 N.C. App. 265, 495 S.E.2d 181 (1998), and upon retrial, defendant was found guilty on 8 May 1998 of the same two charges. Defendant was sentenced to consecutive prison terms of life without parole for the murder and forty-two to sixty months for the assault. Defendant appeals.

I.

[1] We begin by addressing defendant's Motion for Appropriate Relief (MAR), filed with this Court on 30 August 1999 pursuant to N.C. Gen. Stat. § 15A-1418(a) (1999). The substance of defendant's claim in his MAR is that use of a "short form" indictment pursuant to N.C. Gen. Stat. § 15-144 (1999) to charge him with first-degree murder was unconstitutional. The State responds that the MAR should be denied. We agree with the State. That defendant was in a position on a previous appeal to raise the issues in the MAR but failed to do so is

grounds for denial of the motion. *See* N.C. Gen. Stat. § 15A-1419(a)(3) and (b) (1999). As noted above, this case has been tried, appealed, remanded, and retried. At no point in any of these proceedings has the issue of the constitutionality of the short form indictment been raised. Our Supreme Court has held that the short form indictment is adequate to charge first-degree murder. *See State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985). Defendant argues that, during the pendency of the instant appeal, the issue of the indictment's constitutionality was reopened by a recent decision of the United States Supreme Court. *See Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999). However, defendant also candidly concedes in his MAR that the issue is not new:

> [T]his constitutional requirement [that all elements be specified in the indictment] existed at the time that Mr. Riley was indicted in 1995.
>
> . . . .
>
> The current statute, N.C.G.S. Section 15-144, which allows a first-degree murder indictment without alleging all the essential elements, is unconstitutional under *Jones v. United States*, and earlier decisions of the Supreme Court . . . .

Therefore, defendant's argument is that *Jones* clarified existing law. "Motions for appropriate relief generally allow defendants to raise arguments that could not have been raised in an original appeal, such as claims based on newly discovered evidence and claims based on rights arising by reason of later constitutional decisions announcing new principles or changes in the law." *State v. Price*, 331 N.C. 620, 630, 418 S.E.2d 169, 174 (1992) (citing N.C. Gen. Stat. § 15A-1418 official commentary (1988)), *judgment vacated on other grounds*, 506 U.S. 1043, 122 L. Ed. 2d 113 (1993). Because defendant does not contend that *Jones* enunciates a new principle of constitutional law, and because he was in a position to raise the issue during an earlier appeal and did not do so, we deny his MAR.

In its response to defendant's MAR, the State contended that by filing his MAR, defendant was circumventing the thirty-five page limitation on brief length. *See* N.C. R. App. P. 28(j). Defendant thereupon filed a Motion To Strike And To Permit Reply, assuring this Court that his MAR was filed in good faith upon first learning of the *Jones* decision and requesting that he be permitted to reply to the State's response to its MAR. We are fully satisfied that defendant's MAR

was filed in good faith. Although we do not read the paragraph in question as necessarily implying that defendant was acting in bad faith, we nevertheless grant defendant's Motion to Strike the pertinent paragraph of the State's response to defendant's MAR. We deny defendant's Motion to Permit Reply.

## II.

**[2]** We now turn to the issues presented in defendant's brief. Defendant first contends the trial court erred by admitting evidence that when defendant first arrived at Pac Jam II, he told Ms. Johnson that he "had gotten in some trouble" earlier that evening at All for One. Prior to admitting this testimony, the trial court determined that the statement of defendant was relevant and, after conducting the balancing test required by Rule 403, concluded that the probative value of the testimony outweighed any danger of unfair prejudice to defendant. N.C. Gen. Stat. § 8C-1, Rule 403 (1999).

Defendant contends that evidence of his comment was offered to prove bad character. Rule 404(b), which governs the admissibility of evidence of acts of misconduct by a defendant, reads in pertinent part:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999).

Rule 404(b) is a general rule of inclusion of relevant evidence of other crimes or wrongs committed by a defendant and is subject to but one exception which requires exclusion of such evidence only if offered to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Alston,* 341 N.C. 198, 228-29, 461 S.E.2d 687, 703 (1995) (citation omitted). Rule 404(b) "permits the introduction of specific 'crimes, wrongs, or acts' for a legitimate purpose other than to prove the conduct of a person." *State v. DeLeonardo,* 315 N.C. 762, 769-70, 340 S.E.2d 350, 356 (1986); *see* N.C. Gen. Stat. § 8C-1, Rule 404(b).

Assuming that an unspecific statement by defendant that he "had gotten in some trouble" constitutes testimony of another wrong, we consider the statement in the context of other evidence presented in the case. Defendant made the comment to Ms. Johnson when he first arrived at Pac Jam II. As a result of the "trouble" to which defendant alluded, Officer White responded to All for One and spoke with the manager, Billy Williams (Williams). Officer White and Williams then proceeded to Pac Jam II, where Williams located defendant. Officer White asked defendant for his name and address so that Williams could obtain a warrant against defendant if he wished. However, defendant supplied a false name. Officer White left but returned after the shooting. Ms. Johnson approached him and reported that the shooter was the individual he had interviewed earlier about the incident at All for One. Consequently, Officer White placed on his incident report the false name defendant had supplied.

This recitation demonstrates that defendant's comment about having gotten in trouble was not presented in a vacuum, but was part of the narrative that justified Officer White's initial contact with defendant, clarified Ms. Johnson's identification of defendant after the shooting, and explained why an incorrect name was placed on certain documentation in the case.

> "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

*State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174-75 (1990) (alteration in original) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)); *see also State v. White*, 349 N.C. 535, 508 S.E.2d 253 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). Therefore, the questioned evidence was not offered to establish defendant's bad character. Instead, it was presented as part of the "chain of events" culminating in the shooting and subsequent investigation and was therefore admissible. The trial court did not abuse its discretion in determining that the probative value of the evidence outweighed any danger of unfair prejudice. This assignment of error is overruled.

## III.

**[3]** Defendant next argues the trial court erred by overruling his objections to statements made by the prosecutor during closing argument and by denying his subsequent motion for mistrial.

A. Argument Pertaining to Premeditation and Deliberation.

During closing argument, the prosecutor addressed the issues of premeditation and deliberation. When the prosecutor discussed the implications of evidence that defendant brought a firearm to Pac Jam II, the following exchange took place:

[Prosecutor]: The State says yes to you, ladies and gentlemen, and the Supreme Court says to you—and this is 1993— "Evidence that the defendant's actions before the killing was substantial evidence supporting a proper inference of premeditation and deliberation." The evidence tending to show that the defendant was carrying a gun supported an inference—

[Defense Counsel]: Your Honor, I object because that is not what the—that is not the inference of that case. I believe it's Goley or Golden or something like that.

COURT: Overruled.

[Prosecutor]: The evidence tending to show that the defendant was carrying a gun supported an inference that he anticipated a possible confrontation and giving some forethought to how he would deal with a confrontation. If you carry a gun in your pocket, do you ever think about what you're going to do with it?

[Defense Counsel]: Your Honor, again, I object. That is—I'm familiar with that case, and the—the factual circumstance —

COURT: Overruled.

. . . .

[Prosecutor]: If you carry a gun, ladies and gentlemen, do you think about what you're going to do with it?

The parties agree that the case to which the prosecutor referred, and which defendant attempted to recall in his objection, was *State v. Ginyard*, 334 N.C. 155, 431 S.E.2d 11 (1993). In *Ginyard*, the defend-

ant knocked on an apartment door and asked to speak with the victim. A fight ensued, during which the defendant fatally stabbed the victim. Our Supreme Court stated: "[T]he fact that the defendant was carrying a knife was evidence tending to support an inference that he had anticipated a possible confrontation with the victim and that he had given some forethought to how he would resolve that confrontation." *Id.* at 159, 431 S.E.2d at 13. In reaching this result, the Supreme Court relied on *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985). In *Fields*, the defendant and his companions consumed beer and Quaaludes, drove around Wake County in the defendant's truck, then entered the driveway of a private residence and began rummaging through a storage shed. When a concerned neighbor carrying a shotgun approached the men, the defendant fatally shot him. The Supreme Court stated: "The fact that defendant was even carrying a gun was conduct preceding [victim's] murder that evinced defendant's anticipation of a possible confrontation and some forethought of how he would deal with it." *Id.* at 200, 337 S.E.2d at 524.

Review of a trial court's rulings on objections to the jury arguments of counsel is deferential. "[A]rguments of counsel are largely in the control and discretion of the trial judge who must allow wide latitude in the argument of the law, the facts of the case, as well as to all reasonable inferences to be drawn from the facts." *State v. Taylor*, 289 N.C. 223, 226, 221 S.E.2d 359, 362 (1976) (citations omitted). "Ordinarily we do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *Id.* at 227, 221 S.E.2d at 362 (citations omitted). While *Ginyard* is distinguishable from the case at bar because the victim and the defendant in *Ginyard* knew each other and the defendant set up the meeting leading to the murder, the initial encounter between the victim and the defendant in *Fields* was the result of chance. They apparently did not know each other, nor did the defendant plan to meet anyone. To the contrary, the defendant took steps to ensure that the owners of the property onto which he was intruding were absent. Nevertheless, the defendant's preparation for a possible encounter, however unexpected, was held to be admissible evidence of premeditation. Accordingly, it was not improper for the prosecutor in the case at bar to argue that defendant's decision to carry a loaded firearm into Pac Jam II supported an inference that defendant anticipated a possible confrontation and gave forethought to the resolution of a possible confrontation. This assignment of error is overruled.

B.  Argument Pertaining to Defendant's Character

[4]  Defendant assigns as prejudicial error another comment made by the prosecutor during closing argument. When discussing the difficulty of proving premeditation and deliberation with direct evidence, the prosecutor said,

> There is absolutely no way that you can crawl inside of his head and determine what he was believing, what he was premeditating, what he was deliberating. . . . In fact, you don't want to be inside of his head. If you were inside of his head, you would see evil, you would see hate[.]

"On appeal, particular prosecutorial arguments are not viewed in an isolated vacuum," but are considered in context based upon the underlying facts and circumstances. *State v. Moseley*, 338 N.C. 1, 50, 449 S.E.2d 412, 442 (1994) (citation omitted). " '[W]hen the prosecuting attorney does not go outside of the record and his characterizations of the defendant are supported by evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument.' " *State v. Wortham*, 287 N.C. 541, 545-46, 215 S.E.2d 131, 134 (1975) (quoting *State v. Westbrook*, 279 N.C. 18, 39, 181 S.E.2d 572, 584 (1971), *vacated and remanded as to death penalty only*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972)).

Our review of similar cases reveals that where a defendant did not object to similar comments by the prosecutor in closing argument, our Supreme Court has not readily held that the trial court should intervene. *See State v. Flowers*, 347 N.C. 1, 37-38, 489 S.E.2d 391, 412 (1997) (holding that trial court's failure to intervene when prosecutor argued that " '[t]o participate in killing another human being in that manner . . . it's outrageous. It's shocking. It's evil. It's vile' " was not error and that "[w]hen read in context, it is clear that the prosecutor's remarks fell well within the wide latitude afforded prosecutors during closing arguments"); *State v. Larrimore*, 340 N.C. 119, 163, 456 S.E.2d 789, 812-13 (1995) (holding that prosecutor's statement that " '*[defendant] is the ultimate. He is the quintessential evil.* . . . He is *one of the most dangerous men in this State*, I submit to you' " did not reach the level of gross impropriety requiring the trial court to intervene *ex mero motu*).

We reached a similar result where a defendant raised a contemporaneous objection to a prosecutor's argument. In *State v. Frazier*, a sex abuse case, the prosecutor argued that the defendant and another were " '[j]ust as evil and just as sorry and just as mean as two

despicable people could ever be on this earth.' " 121 N.C. App. 1, 16, 464 S.E.2d 490, 498 (1995) (alteration in original), *aff'd,* 344 N.C. 611, 476 S.E.2d 297 (1996). The trial court apparently sustained defendant's objection to the argument, but the defendant made no motion to strike. We found that the prosecutor's argument was not so prejudicial as to require a new trial. *See id.* at 16, 464 S.E.2d at 499.

In light of these cases, we believe the prosecutor's digression, speculating on the contents of defendant's mind immediately after stating that defendant's thoughts were unknowable, did not exceed the bounds recognized by North Carolina courts in closing argument. The evidence showed that defendant went armed to a nightclub; shot Faucette, who was not involved in the dispute that preceded the shooting; shot Tinnin in the back, while Tinnin was either hiding or on the ground; and attempted to shoot Tinnin in the head. Consequently, the prosecutor's characterization of defendant as "evil" was not inconsistent with the record, nor did the argument exceed the bounds permitted in final argument. This assignment of error is overruled.

C. Argument Pertaining To Witness Tracy Morrow.

[5] Evidence was presented at trial that defendant's automobile was discovered behind Tracy Morrow's house after the shooting at Pac Jam II. Contending that the presence of this car was evidence that Morrow had hidden the car for defendant while helping him escape, the prosecutor argued: "[Morrow] had already hid the defendant's car or had it hid behind her house. I didn't ask her where her daughter was that night, but I warned her." Defense counsel's objection was overruled. The prosecutor continued: "She had already attempted and aided him in getting away." Defense counsel objected again, and the trial court instructed that the jury had the responsibility for determining the facts of the case and that "[a]ny statements made to you on behalf of the District Attorney's office is his contention, it is not evidence in this case, and you must not use the same as evidence."

Although defendant contends that the prosecutor's argument was unsupported by evidence, counsel may properly argue all the facts in evidence as well as any reasonable inferences that may be drawn from those facts. *See State v. Monk,* 286 N.C. 509, 212 S.E.2d 125 (1975). Evidence had been presented that: (1) defendant and Morrow were good friends, and he had stayed overnight at her house; (2) Morrow was present at Pac Jam II when defendant shot the victim; (3) defendant's bloodstained car was found parked behind Morrow's home hours after the murder; (4) the car in which defendant was seen

leaving a local hospital with his brother after the murder was also found behind Morrow's home with the motor running; (5) although Morrow said cars typically parked in the unpaved area where defendant's car was found, she could not explain the absence of other tire tracks there; and (6) Morrow spoke by telephone with defendant after he was apprehended in New York and returned to the Alamance County Jail. This evidence supported a reasonable inference that Morrow allowed defendant to hide his car behind her home before he left North Carolina. In addition, the trial court properly instructed the jury to consider the prosecutor's argument as a contention, not as evidence. This assignment of error is overruled.

Finally, defendant argues that the cumulative effect of the prosecutor's arguments constituted prejudicial error. After reviewing the evidence and the arguments, we hold that there was no improper prejudice to defendant from the cumulative effect of the arguments analyzed above. This assignment of error is overruled.

III.

[6] In his last assignment of error, defendant contends the trial court erroneously refused to give the jury his requested additional instruction on premeditation and deliberation. The trial court gave the following pattern instruction:

[T]he State must prove that the defendant acted with premeditation, that is, that he formed the intent to kill the victim over some period of time, however short, before he acted.

. . . [T]hat the defendant acted with deliberation, which means that he acted while he was in a cool state of mind.

This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or excited when the intent was carried into effect.

Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by the victim, the conduct of the defendant before, during, and after the killing, threats and declarations of the defendant, infliction of lethal wounds after the victim is felled, and the manner in which or means by which the killing was done.

**STATE v. RILEY**

[137 N.C. App. 403 (2000)]

Defendant requested that the trial court give the following additional instruction:

> On the other hand, you may infer from the circumstances that the defendant did not premeditate or deliberate the killing. For example, you may find that the defendant was enraged, frightened, disoriented, emotionally upset, panic-stricken or agitated when he formed the intent to kill, if he did form this intent. If so, you may consider this finding in deciding whether the defendant formed the intent to kill in a cool state of mind. If you have a reasonable doubt that the defendant formed the intent to kill in a cool state of mind, the state has not proven that the defendant premeditated or deliberated the killing.

"When a party aptly tenders a written request for a specific instruction which is correct in itself and supported by evidence, the failure of the court to give the instruction, at least in substance, is error." *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972) (citation omitted). Defendant properly concedes that the pattern instruction given by the trial court has been approved by our Supreme Court. *See State v. Leach*, 340 N.C. 236, 456 S.E.2d 785 (1995). The trial court's instruction required that in order to convict, the jury must find that any intent to kill "was formed with a fixed purpose *not under the influence of some suddenly aroused violent passion.*" (Emphasis added.) Therefore, under this instruction, the jury was required to find that defendant premeditated and deliberated while in a cool state of mind. Although the requested instruction provided examples that would negate such a cool state of mind, the instruction that was given, viewed in its entirety, encompassed the substance of defendant's request. *See Jones v. Development Co.*, 16 N.C. App. 80, 191 S.E.2d 435 (1972). This assignment of error is overruled.

Defendant received a fair trial free of prejudicial error. Defendant's Motion For Appropriate Relief is denied. Defendant's Motion To Strike And To Permit Reply is granted in part and denied in part.

No error.

Judge LEWIS concurs.

Judge GREENE dissents with separate opinion.

Judge GREENE dissenting.

I disagree with the majority that defendant's motion for appropriate relief should be denied, and, therefore, I respectfully dissent.

### Procedural Issue

North Carolina General Statute section 15A-1419 provides a motion for appropriate relief must be denied if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C.G.S. § 15A-1419(a)(3) (1999). The statute, however, creates an exception to this rule when "failure to consider the defendant's claim will result in a fundamental miscarriage of justice." N.C.G.S. § 15A-1419(b)(2).

In this case, defendant contends his indictment for first-degree murder violated his Sixth Amendment right to notice and right to due process under the United States Constitution. Assuming defendant's contention has merit, his conviction is based on an invalid indictment, and the trial court was without jurisdiction to enter judgment against him. *See State v. Smith*, 263 N.C. 788, 789, 140 S.E.2d 404, 405 (1965) ("valid bill of indictment is an essential of jurisdiction"). Accordingly, failure to consider defendant's claim would result in a "fundamental miscarriage of justice," and, therefore, I would reach the merits of defendant's motion for appropriate relief. *See* N.C.G.S. § 5A-1412 (1999) (denial of motion for appropriate relief pursuant to N.C. Gen. Stat. § 15A-1419 is procedural and not determinative of the merits of a party's claim).

Even assuming defendant is not entitled to bring his motion for appropriate relief pursuant to N.C. Gen. Stat. § 15A-1419(b)(2), defendant's motion alleges, pursuant to N.C. Gen. Stat. § 15A-1415(b)(2), that the trial court did not have subject matter jurisdiction over the charge of first-degree murder on the ground the indictment for first-degree murder was invalid as unconstitutional. *See Smith*, 263 N.C. at 789, 140 S.E.2d at 405. Because a defense based on lack of jurisdiction of the trial court over the subject matter of an action "cannot be waived and may be asserted at any time," *In re Green*, 67 N.C. App. 501, 504, 313 S.E.2d 193, 195 (1984), I would reach the merits of defendant's motion for appropriate relief.

### Substantive Issue

Defendant argues in his motion for appropriate relief, in pertinent part, that N.C. Gen. Stat. § 15-144, which creates a "short-form" mur-

STATE v. RILEY

[137 N.C. App. 403 (2000)]

der indictment,[1] violates his Sixth Amendment right to notice and right to due process under the United States Constitution.[2] I agree.

A defendant's right to notice under the Sixth Amendment and right to due process require an indictment to charge each element of an offense. *Jones v. United States,* —— U.S. ——, 143 L. Ed. 2d 311, 319, 326 n.6 (1999) (holding that when a "fact is an element of an offense rather than a sentencing consideration," it must be "charged in an indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt"); *Hamling v. United States,* 418 U.S. 87, 117, 41 L. Ed. 2d 590, 620 (1974) (indictment must contain elements of offense charged).

Premeditation and deliberation are elements of first-degree murder in North Carolina. *State v. Hamby and State v. Chandler,* 276 N.C. 674, 678, 174 S.E.2d 385, 387 (1970), *death sentence vacated,* 408 U.S. 937, 33 L. Ed. 2d 754 (1972). North Carolina General Statute section 15-144, which states the requirements for a valid indictment for first-degree murder, does not, however, require the indictment to include the elements of premeditation and deliberation. N.C.G.S. § 15-144 (1999). Section 15-144, therefore, does not comply with the requirements of due process and the right to notice under the Sixth Amendment of the United States Constitution; consequently, the statute is unconstitutional. *See Faretta v. California,* 422 U.S. 806, 818, 45 L. Ed. 2d 562, 572 (1975) (Sixth Amendment right to notice incorporated as applicable to states through Fourteenth Amendment). In this case, defendant was convicted of first-degree murder based on an indictment issued pursuant to section 15-144, and the indictment did not contain the elements of premeditation and deliberation. I, therefore, would arrest judgment entered against defendant for the charge of first-degree murder. *See State v. Simpson,* 302 N.C. 613, 617, 276 S.E.2d 361, 364 (1981) (arresting judgment is appropriate remedy for judgment based on invalid indictment, and arrested judgment does not bar State from bringing valid indictment).

---

1. The "short-form" indictment created by section 15-144 states "it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed)." N.C.G.S. § 15-144 (1999).

2. The United States Supreme Court, in its recent decision of *Jones v. United States,* —— U.S. ——, 143 L. Ed. 2d 311 (1999), clarified the federal constitutional requirements of a valid indictment. This Court is bound by holdings of the North Carolina Supreme Court which interpret the federal constitution when those decisions squarely address the issue before this Court. *State v. Adams,* 132 N.C. App. 819, 821, 513 S.E.2d 588, 589, *disc. review denied,* 350 N.C. 836, —— S.E.2d ——,

---

cert. denied, —— U.S. ——, 145 L. Ed. 2d 414 (1999). Although the North Carolina Supreme Court has intimated that section 15-144 is constitutional, it has not directly addressed this issue. *See, e.g., State v. Kilpatrick,* 343 N.C. 466, 471 S.E.2d 624 (1996); *State v. Avery,* 315 N.C. 1, 337 S.E.2d 786 (1985); *State v. Williams,* 304 N.C. 394, 284 S.E.2d 437 (1981), *cert. denied,* 456 U.S. 932, 72 L. Ed. 2d 450 (1982); *State v. Lowe,* 295 N.C. 596, 247 S.E.2d 878 (1978). Because this issue has never been squarely addressed by the North Carolina Supreme Court and has not been addressed subsequent to the *Jones* decision, I do not feel bound by previous decisions of the North Carolina Supreme Court regarding the constitutionality of section 15-144.