STATE OF NORTH CAROLINA
v.
BARRY DEAN MINTZ
No. COA07-167
Court of Appeals of North Carolina.
Filed January 15, 2008
This Case not for publication.
Attorney General Roy Cooper, by Special Deputy Attorney General Steven M. Arbogast, for the State.
Nora Henry Hargrove for defendant appellant.
McCULLOUGH, Judge.
Defendant appeals from the jury verdict of guilty of first-degree murder. We determine there was no prejudicial error.

Facts
Barry Dean Mintz ("defendant") was indicted for the first-degree murder of Joe Lewis Bradshaw. The State presented evidence at trial that tended to show the following:
Kathleen Francis worked as a bartender at "Velvet," a bar in Wilmington, North Carolina. After finishing work on 29 November 2004, Ms. Francis left the bar at around 2:30 a.m. On her way to her car, Ms. Francis looked down a nearby alley and observed two men kicking and stomping a man who was lying on the ground. Although the alley was dark, Ms. Francis was able to discern two men who were kicking the man on the ground.
Ms. Francis called 911 to report the incident she had witnessed. Ms. Francis also alerted Jeff Battle, the disc jockey at "Velvet," as to what she observed in the alley. When Ms. Francis returned to the alley with Mr. Battle, the two men were still beating the man on the ground. The two men then ran toward Ms. Francis and Mr. Battle. In an effort to get away from the two men, Ms. Francis and Mr. Battle ran to Mr. Battle's car and drove around the block. When they returned to the scene, the police had already arrived, and Ms. Francis informed the police of what she had seen.
On the same night, Mr. Ira Blaustein was working in his studio, which backed up to the alleyway in question. While taking a break from his work, he heard noises coming from the alleyway. The noises emanating from the alleyway were a series of grunts as well as the sound of two men speaking. After hearing these noises, Mr. Blaustein called 911 to report the suspicious activity.
Mr. Blaustein then walked to an open third-floor window and looked down into the alley. Below, Mr. Blaustein observed two figures kicking something. From the window Mr. Blaustein could hear the men making comments such as: "Kick him"; "Is he dead?"; "Is he breathing?"; "I'll break your leg"; and "Crush his skull." A short time later, Mr. Blaustein recorded his observations using his typewriter. Officers Chris Adam and Jean Marcel from the Wilmington Police Department responded to the calls describing a disturbance in the alley. When the two officers arrived at the alley, Officer Adam found the two men in the alley and the victim lying on the ground with severe injuries to his head. The victim was identified as Joe Bradshaw, and the two men in the alley were later identified as defendant and Mr. Allen.
After being detained, defendant told Officer Adam that he had kicked Mr. Bradshaw "a couple of times." Officer Adam also noted that defendant had blood on his shoes and cuts on his knuckles. Although both Officer Adam and Officer Marcel observed defendant, neither officer characterized defendant as being impaired. Defendant later stated to another officer, Officer Jeremy Bland, that he, defendant, had struck Mr. Bradshaw about four times in the head. Officer Bland noted that defendant appeared to be slightly impaired from alcohol usage.
Defendant was taken to the Wilmington Police Department where he was interviewed by Detective Waymon Hyman and subsequently signed a written statement. This interview was recorded on videotape. Defendant stated that he heard a girl yell, and although he never saw the girl, proceeded to chase a black male down an alley. Once in the alley, the black male struck defendant in the groin and face, causing defendant to fall to the ground. After defendant returned to his feet, he again chased the black male, this time kicking the black male in the groin and hitting him in the face about five times. At the time the EMS arrived at the scene of the attack, Mr. Bradshaw was unconscious and unresponsive. He appeared to be suffering primarily from head injuries and exhibited significant swelling around his face and head. Mr. Bradshaw was subsequently transported to New Hanover Regional Medical Center where he was treated for a significant scalp laceration exposing his cranium bone and symptoms consistent with a severe central injury involving the brain. Mr. Bradshaw was later diagnosed with a diffused axonal injury, a sheering injury to the brain. Mr. Bradshaw remained unresponsive in the hospital until being transferred to Britthaven, a nursing facility, on 29 January 2005. Mr. Bradshaw died several days later. An autopsy performed on Mr. Bradshaw revealed fractured ribs and identified the cause of death as complications associated with blunt force trauma to the head.
On 21 February 2005, defendant was indicted for first-degree murder by the New Hanover County Grand Jury for his involvement in the 29 November 2004 killing of Joe Lewis Bradshaw. Defendant was tried on 8 August 2006 in the New Hanover County Superior Court, the Honorable Ernest B. Fullwood presiding. On 16 August 2006, the jury found defendant guilty of first-degree murder for the killing of Mr. Bradshaw. At sentencing, Judge Fullwood sentenced defendant to life imprisonment without the possibility of parole. Defendant now appeals from the judgment of the trial court.

I.
Defendant first argues that the trial court erred in its instruction to the jury. Specifically, defendant contends that the trial court incorrectly instructed the jury that malice may be implied from an attack mounted using only hands and feet. We disagree.
A deadly weapon is "any article, instrument or substance which is likely to produce death or great bodily harm." State v. Sturdivant, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981). "This Court has held previously that a defendant's fists can be considered a deadly weapon depending on the manner in which they were used and the relative size and condition of the parties." State v. Lawson, 173 N.C. App. 270, 279, 619 S.E.2d 410, 416 (2005)(emphasis in original),di sc. review denied, 360 N.C. 293, 629 S.E.2d 276 (2006); see State v. Rogers, 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002), disc. review denied, 357 N.C. 168, 581 S.E.2d 442 (2003);State v. Krider, 138 N.C. App. 37, 44, 530 S.E.2d 569, 573 (2000); State v. Grumbles, 104 N.C. App. 766, 771, 411 S.E.2d 407, 409-10 (1991); State v. Jacobs, 61 N.C. App. 610, 611, 301 S.E.2d 429, 430, disc. review denied, 309 N.C. 463, 307 S.E.2d 368 (1983); State v. Archbell, 139 N.C. 537, 539, 51 S.E. 801, 801 (1905).
Ordinarily, if death results from an attack made utilizing only hands and feet "on a person of mature years and full health and strength, the law would not imply malice[.]" State v. Lang, 309 N.C. 512, 525, 308 S.E.2d 317, 323-24 (1983). Malice would not be implied in such a situation because the use of hands and feet alone does not typically result in the death of the victim. Id. at 525, 308 S.E.2d at 324. However, if the assault occurred upon "'aninfant of tender years or upon a person [e]nfeebled by old age, sickness, or other apparent physical disability[,]'" the inference would be "quite different." Id. Thus, "[w]hether an attack made with hands or feet alone which proximately causes death gives rise to either a presumption of malice as a matter of law or to an inference of malice as a matter of fact will depend upon the facts of the particular case." Id. A jury can infer malice if it finds "from the evidence and beyond a reasonable doubt that the defendant intentionally assaulted the deceased with his hands, fists, or feet, which were then used as deadly weapons[.]" Id. at 526-27, 308 S.E.2d at 324 (emphasis in original); see State v. Elliott, 344 N.C. 242, 269, 475 S.E.2d 202, 213 (1996), cert. denied, 520 U.S. 1106, 137 L. Ed. 2d 312 (1997).
In the instant case, the following instruction on malice was given to the jury:
[M]alice means not only hatred, ill will or spite, as it is ordinarily understood. To be sure, that is malice. But it also means that . . . condition of the mind which prompts a person to take the life of another intentionally or to intentionally inflict serious injury upon another which proximately results in his death without just cause, excuse or justification, or to wantonly act in such a manner as to manifest depravity of mind, a heart devoid of a sense of social duty and a callous disregard for human life.
Defendant does not dispute the propriety of this instruction, but instead objects to the following additional instructions:
Malice may be implied from the evidence malice may be implied from evidence that the victim's death resulted from an attack by hands or feet alone without the use of other weapons should you find beyond a reasonable doubt that the defendant used his hands and/or his feet as deadly weapons and that the victim was an apparent defenseless person at the time. However, you are not compelled to so find.
A deadly weapon is any article, instrument or substance which is likely to cause death or serious bodily injury. In determining whether or not one's hands or feet are a deadly weapon, you should consider the nature of the body part, the manner in which it was used, the size and strength of the defendant as compared to the victim, whether or not the defendant was a mature man at the time of the attack and whether or not the victim was an apparently defenseless person at the time.
Defendant claims the disputed instructions misstated the State's burden of proof, and in essence, gave the State a "leg-up" in proving its case. However, as defendant did not object to the jury instructions at trial, he has failed to preserve the issue for appellate review. See N.C. R. App. P. 10(b)(2)(2007). The jury instructions will therefore be reviewed for plain error only. See State v. Odor, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).
In the instant case, defendant and his accomplice enjoyed a significant size advantage over the victim. The victim, Mr. Bradshaw, was approximately 5'10" tall and weighed approximately 170 pounds. Defendant was 5'11" tall and weighed 265 pounds and his accomplice, Mr. Allen, was 6'2" tall and weighed 225 pounds. The size disparity between the victim and his attackers, coupled with the violent manner in which the attackers used their hands and feet to injure an apparently defenseless victim, comprises sufficient evidence from which a jury could conclude that the attackers were using their hands and feet as deadly weapons. Should the jury determine defendant was using his hands and feet as deadly weapons, it could then infer malice on the part of defendant in accordance with the trial judge's instructions. See Elliott, 344 N.C. at 269, 475 S.E.2d at 213. Thus, an instruction given by the trial judge informing the jury that such an inference could be drawn would not unduly prejudice defendant. We therefore hold the trial court did not commit plain error in delivering the additional instructions.

II.
Defendant argues that the trial court erred in failing to instruct the jury, as requested, on voluntary intoxication, thereby depriving defendant of his defense. We disagree.
"Voluntary intoxication is not a legal excuse for a criminal act; however, it may be sufficient in degree to prevent and therefore disprove the existence of a specific intent such as an intent to kill." State v. Gerald, 304 N.C. 511, 521, 284 S.E.2d 312, 318 (1981) (citation omitted). Defendant's burden of production is not satisfied by evidence of mere intoxication. State v. Mash, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). "He must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill." Id. In the absence of such evidence, the court is not required to charge the jury on voluntary intoxication. Gerald, 304 N.C. at 521, 284 S.E.2d at 319. Defendant's primary argument that he lacked the ability to form specific intent is based on the evaluation performed by Dr. William Morton. From this evaluation, Dr. Morton determined defendant was suffering from alcohol dependence. Dr. Morton further opined that defendant was "excessively intoxicated due to alcohol" on the night of the incident and that he was "markedly impaired when he was involved in [the] fight." Dr. Morton, however, did not draw this conclusion from discussions with individuals who witnessed defendant's behavior on the night of the attack, nor did Dr. Morton examine the videotape of defendant's interview with the police taken shortly after the attack. Rather, Dr. Morton based his opinion largely on information he received from prior medical records as well as a subsequent interview with defendant several months after the attack occurred. Thus, Dr. Morton's testimony, by itself, is not substantial evidence of defendant's inability to form specific intent at the time the attack occurred.
Upon review, the record shows that although defendant presented evidence that he was under the intoxicating effects of alcohol at the time he attacked the victim, defendant failed to show substantial evidence of intoxication that would overrule his ability to form a deliberate and premeditated intent to kill at the time of the attack. Therefore, we find no error.

III.
Defendant argues the trial judge erred in allowing the prosecutor to improperly comment on defendant's right to a jury trial. According to defendant, the reference to defendant's right to a jury trial, made during the prosecutor's closing argument, unfairly prejudiced him in the eyes of the jury. Therefore, defendant argues, he is entitled to a new trial. We disagree.
This Court has previously recognized that a criminal defendant's right to a jury trial is guaranteed by both the Sixth Amendment to the United States Constitution as well as under our North Carolina Constitution. State v. Thompson, 118 N.C. App. 33, 41, 454 S.E.2d 271, 276, disc. review denied, 340 N.C. 262, 456 S.E.2d 837 (1995); see N.C. Const. art. I, § 24. Further, under our North Carolina Constitution, a defendant who pleads not guilty cannot waive this right. See N.C. Const. art. I, § 24; State v. Hudson, 280 N.C. 74, 80, 185 S.E.2d 189, 193 (1971). "[A] criminal defendant possesses an absolute constitutional right to plead not guilty and be tried before a jury, and 'should not and [can] not be punished for exercising that right.'" Thompson, 118 N.C. App. at 41, 454 S.E.2d at 276 (emphasis in original) (citation omitted).
A defendant's right to a jury trial is considered no less fundamental in our jurisprudence than reliance upon the right to remain silent. Id. at 41, 454 S.E.2d at 276. "Accordingly, prosecutorial argument complaining a criminal defendant has failed to plead guilty and thereby put the State to its burden of proof is no less impermissible than an argument commenting upon a defendant's failure to testify." Id. There is no distinction between the two arguments as to their intrusion upon a criminal defendant's constitutional rights. Id. Thus, this Court has held that a "reference by the State to a defendant's failure to plead guilty is violative of his Sixth Amendment right to a jury trial." Id.
Should the State improperly comment upon the defendant's exercise of his constitutional right to a jury trial, automatic reversal is not necessarily mandated. Id. at 42, 454 S.E.2d at 276. However, the State "must demonstrate to the appellate court that the error is harmless beyond a reasonable doubt." Thompson, 118 N.C. App. at 42, 454 S.E.2d at 276; N.C. Gen. Stat. § 15A-1443(b) (2005). "Overwhelming evidence of guilt may render constitutional error harmless." Id.
In the case at bar, defendant claims the trial judge improperly allowed the prosecutor to comment on defendant's right to a trial by jury. Defendant specifically objects to the following portion of the prosecutor's closing argument:
[PROSECUTOR]: Now, when we are talking about the law that applies in this case, let's carefully consider the defenses. Because we're going to talk about the elements of the crime, what was the defense? Now, when this odyssey started, we heard all about voluntary intoxication.
[DEFENSE COUNSEL]: Objection.
THE COURT: Sustained.
[PROSECUTOR]: Well, I just invite you to remember the opening statements of both attorneys.
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: Overruled.
[PROSECUTOR]: Remember what this man said and what this man said and then read the jury instructions. This defendant did not take responsibility, that's why you are here.
[DEFENSE COUNSEL]: Objection, move to strike.
THE COURT: Overruled.
[PROSECUTOR]: Who is in the alley that he can point the finger at? Well, you can beat up on the officers a little bit and say they didn't do their job, but you've got to start before there because at that point we already have a lifeless man in the alley in a pool of his own blood. Who's there? There is [sic] only two people to blame other than him and they blame both, Joe Brads haw and David Allen.
According to defendant, the prosecutor's comment to the jury that defendant "did not take responsibility, that's why you are here[,]" was an impermissible reference to defendant's right to a jury trial, and thus, should have been stricken from te record.
Upon a review of the record, we hold the prosecutor's statements amounted to an improper reference to defendant's right to a jury trial. Although it appears the prosecutor was trying to rebut an argument put forward by defendant, his assertion that defendant "did not take responsibility, that's why you are here[,]" implies that a jury trial would not have been necessary had defendant pled guilty to the crimes of which he was accused. However, upon further examination of the record, we hold that the prosecutor's comments, though improper, did not amount to prejudicial error. The evidence presented by the State was sufficient to show, inter alia: (1) defendant was present in the alley where the victim was attacked; (2) defendant and his accomplice enjoyed a significant size advantage over the victim;(3) defendant admitted to striking the victim; (4) the victim died as a result of the injuries he sustained from being attacked; and (5) defendant was not so impaired at the time of the attack that he could not form a deliberate and premeditated intent to kill. Thus, we find the evidence against defendant was substantial, cumulative, and compelling. See Thompson, 118 N.C. App. at 43, 454 S.E.2d at 277. Although the trial court erred by overruling defendant's objections to the prosecutor's closing argument and by failing to give curative instructions to the jury, we hold the error was harmless beyond any reasonable doubt given the overwhelming evidence of defendant's guilt. Therefore, we find defendant's argument to be without merit.

IV.
Defendant argues the trial court erred in allowing portions of the prosecutor's closing argument. Specifically, defendant objects to the prosecutor's argument that the witnesses in the case were telling the jury that defendant was a murderer. We disagree.
"[C]ounsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence." State v. Richardson, 342 N.C. 772, 792-93, 467 S.E.2d 685, 697, cert. denied, 519 U.S. 890, 136 L. Ed. 2d 160 (1996) (citation omitted). However, "[a] prosecutor should refrain from making characterizations relating to a defendant which are calculated to cause prejudice before the jury 'when there is no evidence from which such characterizations may legitimately be inferred.'" Thompson, 118 N.C. App. at 43, 454 S.E.2d at 277 (1995) (citation omitted). "The control of the arguments of counsel largely is left up to the discretion of the trial court and the propriety of counsel's remarks generally will not be reviewed unless the remarks are extreme or clearly intended to prejudice the jury." State v. Goblet, 173 N.C. App. 112, 121, 618 S.E.2d 257, 264 (2005). "[A] new trial will be awarded only in cases of extreme abuse."Thompson, 118 N.C. App. at 43, 454 S.E.2d at 277.
"'On appeal, particular prosecutorial arguments are not viewed in an isolated vacuum,' but are considered in context based upon the underlying facts and circumstances." State v. Riley, 137 N.C. App. 403, 412, 528 S.E.2d 590, 596 (citation omitted), appeal dismissed, 352 N.C. 596, 545 S.E.2d 218, disc. review denied, cert. denied, 352 N.C. 596, 545 S.E.2d 217 (2000), cert. denied, 531 U.S. 1082, 148 L. Ed. 2d 681 (2001). "'[W]hen the prosecuting attorney does not go outside of the record and his characterizations of the defendant are supported by evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument.'" State v. Wortham, 287 N.C. 541, 545-46, 215 S.E.2d 131, 134 (1975) (citation omitted).
In the case sub judice, defendant objects to the prosecutor's argument that the witnesses in the case were telling the jury defendant was a murderer. Defendant contends such comments improperly characterized defendant as a murderer. Upon review, we find defendant's contentions without merit. In the instant case, the prosecutor made the following remarks: [Prosecutor]: The evidence is screaming at you, it isn't silent. ... [The witnesses] are speaking for Joe now, ladies and gentlemen, and they are telling you that this defendant is a murderer.
Viewed in the context of the prosecutor's argument as a whole, the prosecutor's remarks characterizing defendant as a murderer do not show that the jury was unfairly prejudiced. See Wortham, 287 N.C. at 546, 215 S.E.2d at 134. While we recognize such a characterization is uncomplimentary, we find the prosecutor's comments did not go outside the scope of the record. Substantial evidence was presented at trial to support the characterization of defendant as a murderer. In his argument, the prosecutor made reference to this evidence when characterizing defendant as a murderer. Thus, given the weight of the evidence and the fact that the prosecutor referenced this evidence in making the characterization, we hold that the prosecutor's comments were not extreme and did not prejudice the jury against defendant. See State v. Walters, 357 N.C. 68, 105-06, 588 S.E.2d 344, 366, cert. denied, 540 U.S. 971, 157 L. Ed. 2d 320 (2003). Defendant's assignment of error is therefore overruled.

V.
Defendant argues the trial court erred in failing to grant a mistrial. Specifically, defendant contends a mistrial should have been granted when the prosecutor exhibited a page of four questions entitled "Questions for Hosford." According to defendant, these questions amounted to an improper argument by the prosecutor that defendant had the burden to produce some evidence. We disagree. In a criminal trial, the burden of proof remains with the State, and the failure of the defendant to present evidence does not remove this burden. State v. Howard, 320 N.C. 718, 729, 360 S.E.2d 790, 796 (1987). "However, in its closing argument, the State may properly bring to the jury's attention the failure of a defendant to produce exculpatory evidence or to contradict evidence presented by the State."State v. Parker, 350 N.C. 411, 431, 516 S.E.2d 106, 120 (1999), cert. denied, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). Should a prosecutor's closing remarks be challenged, these remarks will be reviewed "in the overall context in which they were made and in view of the overall factual circumstances to which they referred." State v. Penland, 343 N.C. 634, 662, 472 S.E.2d 734, 750 (1996), cert. denied, 519 U.S. 1098, 136 L. Ed. 2d 725, reh'g denied, 520 U.S. 1140, 137 L. Ed. 2d 377 (1997). A mistrial would be appropriate only if the prosecutor's argument created such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law. State v. Blackstock, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985).
The record on appeal shows that the prosecutor's argument did not act to shift the burden of proof during trial. Examined in the context in which it was made, and in view of the overall factual circumstances to which it referred, the prosecutor's argument appears to have been meant to refute arguments raised by opposing counsel. Each question highlighted an issue, brought forward by the prosecutor, that if answered in favor of the State would support a conviction for murder in the first degree. Defendant contends that these questions, directed toward defendant's attorney, led the jury to believe that defendant had an obligation to come forward with evidence of his innocence. Even assuming arguendo that such a contention is true, we find any confusion on the part of the jury as to which party held the burden of proof was resolved by the instructions given by the trial judge. The record indicates the trial judge clearly instructed the jury that the burden of proof lay solely upon the State. Further, the judge again emphasized this burden in his charge to the jury, declaring that the State must prove each of the elements of murder in the first degree beyond a reasonable doubt. As such, we are satisfied that a reasonable jury would have understood the prosecution's argument in the context in which it was given, and not as shifting the burden of proof from the State to defendant. See Parker, 350 N.C. at 430-31, 516 S.E.2d at 120. Accordingly, we find defendant's argument to be without merit.
No error.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).