STATE OF NORTH CAROLINA v. MICHAEL ANDERSON THOMPSON

No. 9318SC1062

(Filed 21 February 1995)

1. **Assault and Battery § 112 (NCI4th)— aggravated and misdemeanor assaults with vehicle—defendant's hearsay statements—instruction on accident not required**

Hearsay statements by defendant, who struck the victims with his vehicle as they ran along the side of an apartment building, that he didn't "mean" to injure the victims and that he "accidentally" ran over them did not constitute substantial evidence that required the trial court to instruct the jury on the defense of accident where the State offered uncontradicted evidence that defendant intentionally drove his vehicle directly toward the victims; after striking them, the vehicle struck the building with such force as to leave it inoperable; and there were no skid marks or other signs indicating that defendant attempted to brake the vehicle and no evidence that the vehicle suffered some mechanical defect.

**Am Jur 2d, Trial § 1259.**

2. **Criminal Law § 468 (NCI4th)— closing argument—defendant's failure to plead guilty—improper comment on exercise of right to jury trial**

The prosecutor's argument that a criminal defendant has failed to plead guilty and thereby put the State to its burden of proof constitutes an improper comment on the defendant's exercise of his Sixth Amendment right to a jury trial.

**Am Jur 2d, Trial §§ 554 et seq.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

3. **Criminal Law §§ 427, 468 (NCI4th)— closing argument— exercise of right to jury trial—failure to testify—improper comments—absence of curative actions—harmless error**

The prosecutor's comments during his closing argument that defendant was "hiding behind the law" and that he was "sticking the law in somebody's eye" were improper references to defendant's exercise of his right to a jury trial, defendant's failure to testify, or both, and the trial court committed error violating defendant's constitutional rights by failing to take curative measures at the time of the remarks and defendant's objection thereto. However, this error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

**Am Jur 2d, Trial §§ 554 et seq., 577 et seq.**

**Violation of federal constitutional rule (*Griffin v. California*) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

4. **Criminal Law § 431 (NCI4th)— closing argument—reference to defendant as coward—harmless error**

Assuming that the prosecutor's reference to defendant as a "coward" in his closing argument was not based upon any evidence introduced at trial, it was improper, but the effect of the remark was *de minimis* in light of the overwhelming evidence of defendant's guilt and the isolated nature of the remark.

**Am Jur 2d, Trial §§ 681, 682.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

Appeal by defendant from judgments entered 8 July 1993 by Judge Russell G. Walker in Guilford County Superior Court. Heard in the Court of Appeals 23 August 1994.

**STATE v. THOMPSON**

[118 N.C. App. 33 (1995)]

*Attorney General Michael F. Easley, by Assistant Attorney General Robin W. Smith, for the State.*

*Assistant Public Defender Stanley Hammer for defendant-appellant.*

JOHN, Judge.

Defendant appeals convictions of assault with a deadly weapon inflicting serious injury and of misdemeanor assault with a deadly weapon. He contends the trial court erred by: (1) refusing to instruct the jury on the defense of accident and (2) overruling his objections to certain statements of the prosecutor during closing argument. We determine the trial court committed no prejudicial error.

The State presented evidence tending to show the following: On the evening of 23 November 1991, Cindy Lou Howard (Howard), Alphonso Santiago (Santiago), and Tracy Sturdivant (Sturdivant) were patrons at the Esquire Lounge. Around 2:00 a.m., Sturdivant engaged in a verbal altercation with another woman named Alma. Howard, Santiago, and Sturdivant subsequently left and drove to Santiago's apartment. They noticed that two automobiles and a truck had followed them. Howard testified the occupants began "running out and wanting to fight and everything." Alma was in the group and resumed the dispute with Sturdivant.

As that argument intensified, defendant, who had driven one of the three vehicles, pulled a knife on Howard as she exited her automobile. Santiago stepped between them and fought with defendant. Howard was hit during the struggle and fell to the cement. After defendant was struck in the jaw and the fight subsided, he returned to his vehicle while Santiago walked in the direction of his residence. Howard then heard a motor cranking and decided to run towards the apartment building. At that point Howard and Santiago were alongside the apartment, approximately one foot away from the building's brick wall. Defendant then drove his station wagon directly towards the two, striking both Howard and Santiago before colliding with the building. Defendant was unable to restart the vehicle and left the area on foot. As a result of being struck, Howard suffered a compound fracture of her left leg which subsequently required amputation.

Defendant was apprehended by police shortly thereafter in a nearby wooded area and transported back to the scene. He was subsequently identified to law enforcement officers as the individual

operating the station wagon at the time it struck Howard and Santiago. Officers then searched defendant and found keys which fit the station wagon in his coat pocket. Upon being detained by officers, defendant gave a false name. Howard, Santiago, and Sturdivant named defendant in court as the assailant.

Defendant presented no evidence. Upon his convictions, he was sentenced to a total of twelve years imprisonment.

I.

[1] Defendant first contends the trial court erred by failing to instruct the jury on the defense of accident. *See* N.C.P.I., Crim. 307.11. We disagree.

Where an alleged assault is unintentional and the perpetrator acted without wrongful purpose in the course of lawful conduct and without culpable negligence, a resultant injury will be excused as accidental. *See State v. Faust*, 254 N.C. 101, 112, 118 S.E.2d 769, 776, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961). Culpable negligence is such gross negligence or carelessness as "imports a thoughtless disregard of the consequences" or a "heedless indifference to the rights and safety of others." *State v. Everhart*, 291 N.C. 700, 702, 231 S.E.2d 604, 606 (1977).

"It is well established that when a defendant requests a special instruction which is correct in law and supported by the evidence, the trial court must give the requested instruction, at least in substance." *State v. Tidwell*, 112 N.C. App. 770, 773, 436 S.E.2d 922, 924 (1993) (citations omitted). If a requested instruction is refused, defendant on appeal must show the proposed instruction was "not given in substance, and that substantial evidence supported the omitted instruction." *State v. White*, 77 N.C. App. 45, 52, 334 S.E.2d 786, 792, *cert. denied*, 315 N.C. 189, 337 S.E.2d 864 (1985) (citations omitted). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Gray*, 337 N.C. 772, 777-78, 448 S.E.2d 794, 798 (1994) (citation omitted).

The trial court in the case *sub judice* declined to charge the jury on the defense of accident, and our review of the record discloses the requested instruction was not supported by substantial evidence. Defendant relies almost exclusively upon the following testimony by Howard, offered over defendant's objection:

Q: After [defendant] was arrested did you go to see him in the jail?

A: Yes, I did.

. . .

Q: Did you ask him about what happened at that time?

A: No, I didn't have—I asked him—I walked up to the window and I seen him, and I told him, I asked him if he knew who I was, and he said no, and I backed up to where he could see. We was looking through this little window and I backed up to where he could see my leg, and he knew then who I was, and he told me that he was sorry that— . . . He told me that he was sorry, that he didn't mean to hurt me and if he could he would take his leg off and give it to me, and that he just didn't mean to do it.

Defendant also notes the third-hand hearsay testimony of investigating officer Kim Soben who talked with a Ms. Robs who had spoken with a passenger in the station wagon. Robs reported to Soben that the passenger had stated defendant said he had "accidentally" run over Howard and Santiago. The evidence relied upon by defendant is attenuated at best and therefore insufficient to warrant submission to the jury of an instruction on accident.

Defendant cites *State v. Garrett*, 93 N.C. App. 79, 376 S.E.2d 465, *disc. rev. denied*, 324 N.C. 338, 378 S.E.2d 802-03 (1989), in support of his contention. In *Garrett*, this Court awarded a new trial upon concluding the trial court erred by not instructing the jury on the defense of accident. *Id.* at 82, 376 S.E.2d at 467.

In *Garrett*, the testimony of both the mother and sister of the defendant that he didn't mean to shoot his brother was elicited by the State, "apparently in an effort to show defendant actually shot his brother . . . ." *Garrett*, 93 N.C. App. at 82, 376 S.E.2d at 467. Yet, *Garrett* is distinguishable in that the prosecution therein offered no eyewitness testimony and presented evidence largely circumstantial. *Id.*

In the case *sub judice,* on the other hand, the State offered substantial uncontradicted testimony of three eyewitnesses that defendant acted intentionally in driving the station wagon directly towards the two victims, with headlights on, as they ran along the side of an apartment building. Upon striking Howard and Santiago, the vehicle struck the building with such force as to crack the wall, smash a gas

meter and drain pipe, and leave the automobile inoperable. The first police officer on the scene further testified he observed no skid marks or other signs indicating defendant had attempted to brake the vehicle, and no evidence suggested the brakes on the automobile failed or that it suffered some other mechanical defect.

Contrary to *Garrett*, therefore, no substantial evidence in the case *sub judice* supports submission of the defense of accident to the jury. Rather, all the evidence demonstrates defendant's act in striking Howard and Santiago with his automobile at the very least involved culpable negligence and, save for the minimal hearsay testimony defendant didn't "mean" to injure Howard, all the evidence indicated an intentional act. Therefore, the defense of accident was not a "substantial factor" in the case and the trial court acted within its discretion in refusing to give the instruction. *State v. Barbour*, 104 N.C. App. 793, 797, 411 S.E.2d 411, 413 (1991).

Accordingly, we reject this assignment of error.

II.

Defendant next alleges the trial court erred by overruling his objections to statements of the Assistant District Attorney during closing argument which defendant maintains impermissibly criticized his exercise of the right to a jury trial and commented upon his failure to testify. Additionally, defendant insists the remarks improperly assailed his character which was not in issue. For the reasons which follow, we find no prejudicial error.

Defendant highlights the following prosecutorial assertions as error:

Why are we having to hear this case? If it was anything else, if there was anything else amiss, if he wasn't really driving or something else like that there would be some questions—

. . . .

All the evidence you heard in this case came from the State. So why do you have to hear it? Everybody in the State in North Carolina that's charged with a crime has a right to a jury trial and they are innocent until proven guilty. Every person who is charged with any crime, whether it be murder, rape, robbery, whatever, is entitled to have twelve people hear their case. They can plead not guilty. Anyone can plead not guilty.

. . . .

**STATE v. THOMPSON**

[118 N.C. App. 33 (1995)]

It is up to the District Attorney's office to prove to twelve people that don't know anything about [the] case beyond a reasonable doubt that the man did what they're charging him with. And that will always be the law and nobody wants to change that. Because see, those two things are great. They protect everybody in this State. It's like this pen right here. You know, this is a great idea right here. It writes and draws and whatever you want to do with it. If I take it and stick it in somebody's eye it's a bad thing. Ladies and gentlemen, if you let the law be like this pen, if a guilty person hides behind that law it's like sticking the law in somebody's eye.

. . . .

Only, ladies and gentlemen, the only way that people can plead not guilty are is if there's some mistake about it or you can plead not guilty and say all right, Mr. D.A., put your witnesses up there and prove it to these twelve people. But just because you plead not guilty doesn't mean you didn't do it. You can plead not guilty and say State, prove it. Well, ladies and gentlemen, we've proved it. The point about that is if you allow a guilty person like that man there to hide behind the law and use it—

. . . .

—it's like a coward's way out. It's like a person who says well, you know, maybe I did it, but who cares, maybe a jury won't convict me. Don't let that man take the coward's way out.

A.

Defendant's first two contentions regarding the foregoing statements allege violations of constitutional dimension, that is, impermissible commentary upon a criminal defendant's exercise of his right to a jury trial and upon his failure to testify.

Proceeding in reverse order, we note our Supreme Court has recently reiterated the well settled principle that a criminal defendant may not be compelled to testify, and that "any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent." *State v. Baymon,* 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994) (citing *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, *reh'g denied,* 381 U.S. 957, 14 L. Ed. 2d 730 (1965)). *See also* N.C. Const. art. I, § 23 and N.C. Gen. Stat. § 8-54 (1986). The purpose behind this rule is that reference by the prosecution would nullify the

policy that failure to testify should create no presumption against a defendant. *State v. Bovender,* 233 N.C. 683, 689-90, 65 S.E.2d 323, 329 (1951), *overruled on other grounds, State v. Barnes,* 324 N.C. 539, 380 S.E.2d 118 (1989). "To permit counsel . . . to comment upon or offer explanation of the defendant's failure to testify would open the door for the prosecution and create a situation the statute was intended to prevent." *Id.*

However, prejudicial commentary upon a criminal defendant's exercise of his right to a jury trial has not previously been addressed in this jurisdiction. The question was considered by the federal court in *Cunningham v. Zant,* 928 F.2d 1006 (11th Cir. 1991). In that case, the prosecutor at trial had made the following statements during closing argument:

> [I]t's offensive to me to sit here and I don't say this for any personal reason, but to be in this courtroom having asked for recesses to get my body in shape to try a case for several days, when a man sits up here and tries to mislead you first of all, into believing he's not guilty. That's offensive, to me. That's trifling with the processes of this court. I personally dislike that, and I don't mind publicly saying it, and I will say it next time I feel it. This system we have is too precious. It took too many lives to bring it here, to let somebody come in here and take his chances on killing a man, robbing a man, trying to escape and then beg and ask the jury, not him himself, but through cross-examination and casting reflections and dispersions on witnesses. . . . The case here, Ladies and Gentlemen of the Jury, is, "Find me guilty first, and then I'll take the stand and beg you to save my life."
>
>  . . .
>
> He's had a trial of people in Lincoln County, . . . he's had the right to have witnesses face. He's had the right to cross-examination. He's had the right to have His Honor charge the jury correctly. He's had every right afforded a human being, although sometimes I wonder if they're really entitled to it.

*Id.* at 1019 n.22; 23.

The *Cunningham* court observed the prosecutor's comments, *inter alia,* improperly implied the defendant had in some way abused the judicial system by exercising his Sixth Amendment right to a jury trial. *Id.* at 1020. However, the court resolved the issue by determining these comments were violative of a prosecutor's obligation not to

"make an appeal to the jury that is directed to passion or prejudice rather than to reason and to an understanding of the law." *Id. See also U.S. v. Smith*, 934 F.2d 270, 275 (11th Cir. 1991) (prosecutor's argument that defendant had " 'not taken responsibility for his actions' " because he refused to plead guilty like co-defendants was "improper, but . . . the error was harmless" when curative instruction immediately given and there "was ample evidence to convict [defendant]"), and *People v. Guyon*, 117 Ill. App. 3d 522, 536, 453 N.E.2d 849, 861 (1983) (prosecutor's argument that presumption of innocence is ripped off "like any shroud that cowards hide behind" upon the case against defendant being proven implies the presumption is "a shield or refuge for the guilty"; such argument "demeans our criminal justice system" and is "an affront to the law" not to be tolerated).

In this context, we observe the right to a jury trial is not only guaranteed by the Sixth Amendment to the United States Constitution, but under our North Carolina Constitution the right also can not be waived by a defendant who pleads not guilty. *See* N.C. Const. art. I, § 24; *State v. Hudson*, 280 N.C. 74, 80, 185 S.E.2d 189, 193 (1971), *appeal after remand*, 281 N.C. 100, 187 S.E.2d 756 (1972), *cert. denied*, 414 U.S. 1160, 39 L. Ed. 2d 112 (1974). Further, a criminal defendant possesses an *absolute* constitutional right to plead not guilty and be tried before a jury, and "should not and [can] not be punished for exercising that right." *State v. Langford*, 319 N.C. 340, 345, 354 S.E.2d 523, 526 (1987).

[2] The exercise of the right to a jury trial is thus considered no less fundamental in our jurisprudence than reliance upon the right to remain silent. Accordingly, prosecutorial argument complaining a criminal defendant has failed to plead guilty and thereby put the State to its burden of proof is no less impermissible than an argument commenting upon a defendant's failure to testify. Indeed, we discern no distinction between the two in terms of intrusion upon a criminal defendant's constitutional rights. We therefore hold that reference by the State to a defendant's failure to plead guilty is violative of his Sixth Amendment right to a jury trial.

In the case *sub judice*, defendant contends the prosecutor impermissibly commented upon his failure to plead guilty as well as upon his failure to testify. Because both allegations involve constitutional error, our decision whether to award a new trial involves an identical inquiry in either event. N.C. Gen. Stat. § 15A-1443(b) (1988).

We obviously must first determine whether the State in actuality commented improperly upon the defendant's exercise of a constitutional right; if so, constitutional error has occurred. *Baymon*, 336 N.C. at 758, 446 S.E.2d at 6. The error is not cured by later instruction in the court's jury charge upon the rights impermissibly referred to. *State v. Reid*, 334 N.C. 551, 556, 434 S.E.2d 193, 197 (1993). However, the error may be cured by " 'withdrawal of the remark or by a[n immediate] statement from the court that it was improper, followed by an instruction to the jury not to consider [it]' ". *Id.* (quoting *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975)). Absent effective remedial measures, automatic reversal is not necessarily mandated, but the State must demonstrate to the appellate court that the error is harmless beyond a reasonable doubt. *Id.* at 557, 434 S.E.2d at 198; G.S. § 15A-1443(b). Overwhelming evidence of guilt may render constitutional error harmless. *State v. Brown*, 306 N.C. 151, 164, 293 S.E.2d 569, 578, *cert. denied*, 259 U.S. 1080, 74 L. Ed. 2d 642 (1982) (citing *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284 (1969)).

**[3]** We begin by observing that the prosecutor's comments asserting defendant was "hiding behind the law" and "sticking the law in somebody's eye," even construed in the light most favorable to the State, *Baymon*, 336 N.C. at 758, 446 S.E.2d at 6, may only be interpreted as referring directly either to defendant's exercise of his right to a jury trial or to his failure to testify, or indeed to both. Upon defendant's objections to the portions of the Assistant District Attorney's argument quoted above, the trial court overruled each objection and offered no curative instruction (although later in its jury charge instructed upon both the presumption of innocence and the defendant's privilege not to testify). By failing to take the required curative measures at the time of the remarks and the objection thereto, the trial court committed error violating defendant's constitutional rights. *Reid*, 334 N.C. at 557, 434 S.E.2d at 197.

We therefore examine whether the State has met its burden of showing the error was harmless beyond a reasonable doubt. Defendant asserts a new trial is required under *Reid* (Court unable to conclude the error "had no bearing on the jury's inference of the requisite intent for the felony" charged). *Id.* at 558, 434 S.E.2d at 198; *see also Baymon*, 336 N.C. at 758-59, 446 S.E.2d at 6 (in view of conflicting medical evidence, Court could not conclude error was harmless beyond a reasonable doubt). The State counters that the evidence of defendant's guilt was overwhelming.

Our reading of the record in the case *sub judice* leaves no doubt the trial court's error was harmless, *Brown*, 306 N.C. at 164, 293 S.E.2d at 578, in that the evidence against defendant was substantial, cumulative and compelling. As previously noted, three witnesses provided a detailed description of defendant's actions in striking the two victims with his automobile. We reiterate the evidence showed that defendant, immediately following an altercation with Santiago, drove directly at Howard and Santiago as they proceeded no more than a foot away from an apartment building wall. After hitting the two, defendant's station wagon struck the building with such force as to crack the brick wall, crush the drain pipe and gas meter, and to render the vehicle inoperable despite defendant's attempts to restart it. He then left the scene without inquiring of the victims or seeking assistance for them, was located by police officers standing in some woods a half mile from the scene, possessed the keys to the station wagon, and gave a false name to investigating officers.

In summary, although the trial court erred by overruling defendant's objections to the prosecutor's arguments and by failing immediately thereon to give curative instructions to the jury, the error was harmless beyond any reasonable doubt given the overwhelming evidence of defendant's guilt.

B.

[4] Defendant's final contention is that the Assistant District Attorney inappropriately commented upon defendant's character which was not in issue in this case.

A prosecutor should refrain from making characterizations relating to a defendant which are calculated to cause prejudice before the jury "when there is no evidence from which such characterizations may legitimately be inferred." *State v. Britt*, 288 N.C. 699, 712, 220 S.E.2d 283, 291 (1975). However, whether counsel has abused the wide latitude accorded closing argument is a matter ordinarily left to the sound discretion of the trial judge. *State v. Myers*, 299 N.C. 671, 680, 263 S.E.2d 768, 774 (1980). The exercise of this discretion will not be reviewed on appeal "unless there be such gross impropriety in the argument as would likely influence the verdict of the jury," *id.*, and a new trial will be awarded only in cases of extreme abuse. *State v. Bailey*, 49 N.C. App. 377, 384, 271 S.E.2d 752, 756 (1980), *disc. review denied*, 301 N.C. 723, 276 S.E.2d 288 (1981).

In the case *sub judice,* defendant points out the assistant district attorney referred to him as a "coward." Assuming *arguendo* this characterization was not based upon any evidence introduced at trial, it constituted error. *See State v. Davis,* 45 N.C. App. 113, 115, 262 S.E.2d 329, 330 (1980) (prosecutor's statement calling defendant "S.O.B." is error). However, in view of the substantial evidence of defendant's guilt reviewed above and given the isolated nature of this remark, we conclude the effect could only have been *de minimis. State v. Sexton,* 336 N.C. 321, 363, 444 S.E.2d 879, 903, *cert. denied,* —— U.S.——, 130 L. Ed. 2d 429 (1994) (calling defendant "liar" nonprejudicial error due to overwhelming evidence of guilt). This assignment of error therefore fails.

No error.

Judges GREENE and McCRODDEN concur.

Judge McCRODDEN concurred prior to 15 December 1994.