STATE OF NORTH CAROLINA
v.
New JIMMY WAYLON WARD.
No. COA08-524
Court of Appeals of North Carolina
Filed March 17, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Patrick Wooten, for the State
Anne Bleyman, for Defendant-Appellant.
ERVIN, Judge.
Jimmy Waylon Ward (Defendant) appeals from judgments entered based upon jury verdicts convicting him of possession with intent to sell or deliver cocaine, for which he was sentenced to six to eight months imprisonment, and feloniously maintaining a dwelling for the purpose of keeping or selling cocaine, for which he was sentenced to six to eight months imprisonment and placed on supervised probation for 24 months. From these judgments, Defendant appeals. We find no error.
On 10 February 2005, Sergeant Jonathan Hart (Sergeant Hart) of the New Hanover County Sheriff's Department received a call from Captain Gene Pulley (Captain Pulley), who stated that he had received information from an informant to the effect that Defendant was in possession of cocaine and lived at 620 Inlet Acres Drive. The informant said that Defendant kept cocaine on his person and normally carried it in a pill container located in his pocket. The informant also stated that Defendant drove a white Dodge van, which was at his residence. Sergeant Hart printed out a DMV photo of Defendant and drove to 620 Inlet Acres Drive at 4:00 p.m. along with two supervisors and three detectives in separate vehicles. As he approached, he saw a white Dodge van leave the area of the residence and begin traveling in the opposite direction. Sergeant Hart recognized Defendant as the individual driving the van, so he made a u-turn, activated his blue light, and stopped the van.
As Sergeant Hart approached the van, he noted that Defendant was cooperative, but very nervous. Defendant nervously moved his keys and change in and out of his pocket. Sergeant Hart asked whether Defendant was carrying drugs, and received a negative answer. At that point, Sergeant Hart asked whether he could search Defendant, and Defendant consented. Sergeant Hart discovered two film canisters in Defendant's pants pocket: one canister contained six blue oval tablets and three round white tablets and the other canister contained .4 grams of crack cocaine.
Although Defendant denied having drugs in his residence, he consented to a search of his home. The house was a three bedroom mobile home with two video cameras mounted on the exterior that monitored the driveway and the front door. Defendant's bedroom was locked with a "front door" type lock rather than a closet or bathroom style lock. The bedroom contained the monitors for the cameras, male clothing, a Ruger rifle, a digital scale, assorted ammunition, and a white piece of paper upon which was written what appeared to be amounts of money owed to Defendant. The closet was locked with a deadbolt and padlock, which Defendant opened with keys he had on his person. Sergeant Hart found an additional three canisters, similar to those found on Defendant's person, containing 4.1 grams of crack cocaine. Sergeant Hart also found numerous prescription bottles, two handguns, packets of Viagra, and ammunition. The evidence was photographed and collected, and Defendant was arrested.
This matter came to trial on 16 July 2007. After hearing the evidence, the jury returned verdicts finding Defendant guilty of possession with intent to sell or deliver cocaine and maintaining a dwelling for the purpose of keeping or selling cocaine. The trial court entered judgments based on these convictions on 18 July 2007. From these judgments, Defendant appeals.

Motion to Suppress
In his first argument, Defendant contends that the trial court erred by denying his motion to suppress based on a conclusion that there was reasonable suspicion for Sergeant Hart to stop Defendant. We disagree.
The case before us revolves around the investigatory stop of an automobile, since Defendant's white van was stopped while he wasen route to some unspecified destination. In order to conduct an appropriate warrantless, investigatory stop, an officer must have reasonable and articulable suspicion that the suspect is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). An informant's tip can provide the needed reasonable suspicion as long as it exhibits sufficient indicia of reliability. Alabama v. White, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990). The fact that an informant has provided accurate information in the past can supply sufficient indicia of reliability to justify an investigatory stop. Adams v. Williams, 407 U.S. 143, 32 L. Ed. 2d 612 (1972). "[A] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." State v. Hughes, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000).
"The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact `are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.'" State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). This Court may not disturb the trial court's findings of fact if they are supported by competent and material record evidence. State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). At a suppression hearing, conflicts in the evidence are to be resolved by the trial court. See State v. Johnson, 322 N.C. 288, 295, 367 S.E.2d 660, 664 (1988). However, the trial court's conclusions of law are fully reviewable on appeal. See Hughes, 353 N.C. at 208, 539 S.E.2d at 631.
In the instant case, Captain Pulley received information from an informant that Defendant was in possession of cocaine and lived at 620 Inlet Acres Drive. The informant said that Defendant kept cocaine on his person and normally carried this cocaine in a pill container situated in his pocket. The informant also said that Defendant drove a white Dodge van, which was located at his residence. Sergeant Hart testified that "[Captain Pulley] told me that [the informant] . . . had always been reliable and that he wanted to act on it right then. He felt that it was good information." Sergeant Hart obtained a DMV photograph of Defendant before leaving for 620 Inlet Acres Drive. As the officers approached Defendant's residence, they observed Defendant driving away in a white Dodge van. At that point, Sergeant Hart stopped Defendant's vehicle.
The question for this Court in the instant case is whether the information from the informant, which was known to the officer before the stop was made, was sufficiently reliable to create reasonable suspicion justifying the stop. Florida v. J.L., 529 U.S. 266, 271, 146 L. Ed. 2d 254, 260 (2000). Defendant relies on Hughes, 353 N.C. 200, 539 S.E.2d 625, in arguing that the information available to the investigating officers was insufficient to create a reasonable suspicion. In Hughes, the officers received the following information from an anonymous informant:
Detectives Bryan and McAvoy had a physical description of a dark skinned Jamaican whose name and clothing description could not be recalled, who was going to North Topsail Beach, who "sometimes" came to Jacksonville on weekends before dark, who "sometimes" took a taxi, and who "sometimes" carried an overnight bag. The only other information the officers had was that defendant might be arriving on the 5:30 p.m. bus. . . .
It appears from the record that the only items of the informant's statement actually confirmed by the officers before the stop were that they saw a man meeting the suspect's description come from around a bus that had arrived in Jacksonville at approximately 3:50 p.m., that he was carrying an overnight bag, and that he left the station by taxi.
Hughes, 353 N.C. at 207-209, 539 S.E.2d at 631. The Court in Hughes concluded that, "[w]ithout more, these details are insufficient corroboration because they could apply to many individuals." Id. The Court explained:
Here, before stopping the taxi, the officers did not seek to establish the reliability of the assertion of illegality. They did not confirm the suspect's name, the fact that he was Jamaican, or whether the bus from Rocky Mount had originated in New York City. Moreover, because the officers stopped the taxi before it reached the Triangle area, they failed to corroborate whether the individual might be headed to North Topsail Beach, as the informant had stated, or to Wilmington, Richlands, Kinston, or some other destination.
Hughes, 353 N.C. at 209, 539 S.E.2d at 632.
The instant case is readily distinguishable from Hughes. Unlike the source of the anonymous tip in Hughes, the informant in this case was an individual known to at least one law enforcement officer.[1] In Hughes, there was "no indication that the informant had been previously used and had given accurate information[.]" Id. at 204, 529 S.E.2d at 628-29. Here, the informant had previously been used, and his information had proven reliable. In Hughes, the officer could not recall whether he had been given the suspect's name and did not know at what time or on which bus the suspect would arrive. In this case, on the other hand, Sergeant Hart was given Defendant's name and recognized Defendant from the DMV photo he retrieved before stopping Defendant.[2] Sergeant Hart also knew Defendant's exact address, that Defendant drove a white Dodge van, and that Defendant was currently at his residence. As he approached 620 Inlet Acres Drive, Sergeant Hart observed someone that he could identify as Defendant driving away in a white Dodge van. Although the informant had not predicted that Defendant would be driving away from 620 Inlet Acres Drive in the white Dodge van at exactly the time that the investigating officers approached,[3] the trial court's findings that a known informant correctly associated Defendant with the address in question and a white Dodge van is more than adequate corroboration of the information supplied by the informant for purposes of a valid investigatory stop. "[B]ecause an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity[.]" White, 496 U.S. at 331-32, 110 L.Ed. 2d at 310 (1990). The informant in this case stated that he had seen Defendant in possession of cocaine; the informant had proven to be reliable in the past; and the investigating officers adequately verified the information that he provided.
We conclude that Hughes is distinguishable from the instant case and that Sergeant Hart had reasonable suspicion to make the investigatory stop. The trial court did not err in denying Defendant's motion to suppress,[4] so that this assignment of error is overruled.

Motions to Dismiss:
In Defendant's second argument, he contends that the trial court erred in denying his motion to dismiss the charges of possession with intent to sell and deliver cocaine and maintaining a dwelling. We disagree.
In evaluating the validity of a motion to dismiss, all the evidence admitted must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. State v. Witherspoon, 293 N.C. 321, 237 S.E.2d 822 (1977). Any contradictions or discrepancies in the evidence are for resolution by the jury. Witherspoon, 293 N.C. at 237, S.E.2d at 826. The trial judge must decide whether there is substantial evidence of each element of the offense charged. Id. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).
The elements of possession with intent to sell or deliver cocaine are: (1) Defendant possessed the substance; (2) the substance was cocaine, a controlled substance; and (3) Defendant intended to sell or distribute the controlled substance. N.C. Gen. Stat. § 90-95(a)(1) (2007).
Defendant does not deny the existence of evidence tending to show that he possessed cocaine. Instead, he argues that the evidence does not adequately establish that he intended to sell or deliver cocaine. The evidence shows, however, that Defendant was in possession of cocaine; that Defendant stated that his girlfriend was addicted to cocaine; that he gave cocaine to his girlfriend daily to keep her from getting sick; that Defendant lived in a fortress-like residence; and that Defendant possessed a set of scales and what appeared to be a list of amounts of money owed to him by various people. We conclude that the foregoing evidence, when viewed in the light most favorable to the State, is sufficient to survive Defendant's motion to dismiss and go to the jury. Aside from containing direct evidence that Defendant intended to deliver the cocaine that he possessed to his girlfriend, the appearance of his residence, the presence of the scales, and the list of amounts of money owed to him from various people supports an inference that he intended to sell cocaine to third parties as well. Thus, the trial court did not err by denying Defendant's motion to dismiss the charge of possession with intent to sell or deliver cocaine.
The elements of maintaining a dwelling are that the defendant (1) knowingly or intentionally (2) kept or maintained (3) a dwelling house, building or other place (4) for the use, keeping, or selling of controlled substances. See N.C. Gen. Stat. § 90-108(a)(7) (2007).
The following evidence supports the charge of maintaining a dwelling: Sergeant Hart discovered 4.1 grams of cocaine in a padlocked and dead bolted closet in Defendant's residence, the keys to which Defendant had on his person; cameras were mounted to monitor the driveway and front door; the monitors associated with these cameras were kept inside Defendant's bedroom, which was locked with a "front door" lock; and Defendant possessed a Ruger rifle, a digital scale, a paper bag containing copper mesh, and a piece of paper which appeared to contain a list of amounts owed to Defendant in his residence. Viewed in the light most favorable to the State, this evidence is sufficient to establish each element of the offense of maintaining a dwelling, such that the trial court did not err in denying Defendant's motion to dismiss this charge. Thus, the associated assignments of error are overruled.

Jury Instruction:
In his final argument, Defendant contends that the trial court erred in failing to instruct the jury as to Defendant's decision not to testify after confirming to defense counsel that the instruction would be given. Assuming arguendo that the trialcourt erred, State v. Ross, 322 N.C. 261, 367 S.E.2d 889 (1988), any such error was harmless beyond a reasonable doubt.
In cases of potential constitutional error, "automatic reversal is not necessarily mandated, but the State must demonstrate to the appellate court that the error is harmless beyond a reasonable doubt." State v. Thompson, 118 N.C. App. 33, 42, 454 S.E.2d 271, 276 (1995); see also State v. Ross, 322 N.C. 261, 267-268, 367 S.E.2d 889, 893 (1988) (subjecting error arising on somewhat similar facts to harmless error analysis, while concluding that such an error was not harmless beyond a reasonable doubt in that case given the trial tactics adopted by defense counsel and the historical importance of the right to refrain from testifying). "Overwhelming evidence of guilt may render constitutional error harmless." Thompson, 118 N.C. App. at 42, 454 S.E.2d at 276.
Here, the evidence against Defendant was substantial, cumulative and compelling. Investigating officers found cocaine on Defendant's person and in his residence. Defendant conceded that he had cocaine in his possession for the purpose of giving it to his addicted girlfriend. The fortified condition of Defendant's residence, the discovery of digital scales, and the list of amounts of money owed to Defendant is further evidence that Defendant possessed cocaine and maintained his dwelling for the purpose of selling and delivering cocaine. This evidence was not, as we read the record, disputed in any way. Thus, any error arising from the trial court's failure to instruct the jury regarding Defendant's decision not to testify was harmless beyond a reasonable doubt.
For the foregoing reasons, we find that Defendant had a fair trial, free from prejudicial error.
NO ERROR.
Judges WYNN and HUNTER, Robert C. concur.
Report per Rule 30(e).
NOTES
[1] In his brief, Defendant contends that the Court should treat this case as one involving an anonymous tip rather than involving information received from a known informant. However, the trial court specifically found that Captain Pulley had received the information that led to the investigatory stop from "one of his informants" and that "the information from this informant had always proven reliable in the past." See State v. Nixon, 160 N.C. App. 31, 34, 584 S.E.2d 820, 822 (2003) (stating that "[t]he difference in evaluating an anonymous tip [as compared to a known informant] is that the overall reliability is more difficult to establish, and thus some corroboration of the information or greater level of detail is generally necessary"). The factual findings in this case had ample support in the record and establish that the individual in question was known to Captain Pulley. The fact that Sergeant Hart had not had any direct dealings with this informant and did not have any detailed information about the informant's previous dealings with Captain Pulley or other investigating officers does not undermine the validity of the trial court's findings and goes to the trial court's evaluation of the weight to be given to the evidence rather than to the appropriateness of the trial court's findings. Thus, the trial court properly treated the tip at issue here as coming from a known informant rather than an anonymous tipster.
[2] The fact that Sergeant Hart was given Defendant's name and recognized Defendant based on a DMV photograph distinguishes this case from State v. McArn, 159 N.C. App. 209, 582 S.E.2d 371 (2003), upon which Defendant also relies.
[3] Although the accuracy of predictive information provided to investigating officers has been deemed important in cases involving anonymous tips, Florida v. J.L., 529 U.S. 266, 146 L. Ed. 2d 254 (2000); Alabama v. White, 496 U.S. 325, 110 L. Ed. 2d 301 (1990), the decisions in cases involving known and reliable informats have not required evidence of accurate predictions in order to justify sustaining investigative stops stemming from information provided by known and reliable informants like the one at issue here. Adams v. Williams, 407 U.S. 143, 32 L. Ed. 2d 612 (1972).
[4] Admittedly, the trial court's conclusion concerning the adequacy of the investigating officers' corroborative activities references events that occurred after Sergeant Hart stopped the white Dodge van. As Defendant notes, the reasonable suspicion necessary to support an investigatory stop must be based on information in the possession of the investigating officers at the time of the stop. Hughes, 353 N.C. at 208, 539 S.E.2d at 631. However, in light of the information known to the investigating officers at the time that Sergeant Hart stopped Defendant, the fact that the trial court mentioned irrelevant material in his conclusion of law addressing the officers' corroborative activities does not suffice to undermine the validity of his ultimate conclusion.