An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-16

Filed 1 October 2025

Guilford County, No. 22CRS276647-400

STATE OF NORTH CAROLINA

v.

JOSE JESUS ROBLES-CHAVIRA, Defendant.

Appeal by defendant from judgment entered 14 December 2023 by Judge Susan E. Bray in Guilford County Superior Court. Heard in the Court of Appeals 13 August 2025.

> *Center for Death Penalty Litigation, by Ryan C. Kuchinski, for defendant-appellant.*

> *Attorney General Jeff Jackson, by Assistant Attorney General Rana M. Badwan, for the State.*

FLOOD, Judge.

Defendant Jose Jesus Robles-Chavira appeals from the trial court's judgment finding him guilty of trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic cocaine by possession and transportation. On appeal, Defendant argues the trial court: first, prejudicially erred in allowing a

detective lay witness to opine that Defendant's acquaintance, Saul Garcia-Romero ("Garcia"), was a drug addict; and second, erred in failing to intervene *ex mero motu* when the State improperly commented on Defendant's constitutional right to plead not guilty during closing argument. Upon careful review, we conclude Defendant's first argument is not preserved for our appellate review, and second, the trial court did not err in failing to intervene *ex mero motu* where Defendant has not shown he was prejudiced by the State's improper comments made during closing argument.

## I. **Factual and Procedural Background**

In the weeks leading up to 23 August 2022, officers of the Guilford County Sheriff's office investigated and surveilled Apartment K in Building 3552, located in Greensboro, North Carolina, for narcotics activity based on a tip they received from a confidential informant. During the surveillance of Apartment K, officers observed Defendant enter and exit through the front door of Apartment K using a key. After Defendant's girlfriend moved out, Defendant lived alone in Apartment K.

On 23 August 2022, officers observed a silver Kia park in the parking lot in front of Apartment K. Officers watched Defendant walk from Apartment K to the Kia, retrieve "a black bag from the vehicle," return "directly back into Apartment K[,]" walk back to the Kia with the same bag, leave the bag inside the vehicle, and then return to Apartment K "empty-handed." The Kia then "drove away[,]" and soon thereafter, a red Mercedes SUV pulled into the parking lot, which officers were "already familiar with" as being "involved in this investigation."

Officers observed Defendant, Garcia, and one other person walk from Apartment K and get into the Mercedes. As the group left Apartment K, Garcia carried a white bag with "LIMS" written in red, containing what "looked like a shoebox in the bag." Once the group entered the Mercedes, the vehicle left the parking lot, and a mobile surveillance unit began following the Mercedes. At different locations, the mobile unit observed the Mercedes traveling above the speed limit and failing to use a turn signal, which prompted officers to conduct a traffic stop.

During a search of the Mercedes, officers located and opened the white bag with "LIMS" written in red, along with the shoebox, and found a "half kilo of cocaine" and "a digital scale" inside. As a result of officers finding the cocaine, all occupants of the vehicle were handcuffed and arrested. The officers questioned Garcia about the contents of the bag, and Garcia told them that he did not know, stating: "That's [Defendant's] bag, he gave it to me so I can took [sic] it to the car." At this time, officers also observed Defendant wearing what appeared to be the same shoes depicted on the shoebox in which the cocaine was found.

The officers then returned to search Apartment K. Defendant admitted that he lived at Apartment K, and he consented to a search of Apartment K by the officers. The search resulted in officers uncovering drug paraphernalia, including "a plate that had cocaine residue on it or suspected cocaine residue on it[,]" "a box cutter located on a cutting board with white residue on the tip of the box cutter with the blade out[,]" "prop money[,]" "packaging material, which [officers] know is consistent with kilo

wrappers[,]" and a safe. Defendant gave permission for the officers to forcibly open the safe, which contained "the other half of the kilo of cocaine[.]" Defendant was charged with two counts of drug trafficking and one count of conspiracy to traffic drugs.

On 20 February 2023, a grand jury indicted Defendant with: (1) trafficking in cocaine by possession; (2) trafficking in cocaine by transportation; and (3) conspiracy to traffic cocaine by possession and transportation. Garcia, however, entered into a plea deal, promising to testify at Defendant's trial in exchange for a reduction in his sentence.

This matter came on for trial on 11 December 2023. At trial, Garcia testified to using cocaine and that he bought his supply of cocaine from Defendant "twice a month" at Defendant's apartment, Apartment K. Garcia explained that, on the day of their arrest, Defendant had invited Garcia to attend a party with him, and that Defendant offered to give Garcia "free drugs" for going with him to the party.

During trial, several officers testified, including Detective J.A. Jasso. During his testimony, Detective Jasso referred to Garcia as a drug addict, and explained that Garcia likely agreed to go to the party because, based on Detective Jasso's training and experience, he "know[s] that addicts or people addicted to this poison or this substance, are easily persuaded with, obviously this notion of being given narcotics" and thus "they would agree." Defendant objected here, but the trial court overruled the objection.

During the State's nearly thirty-page closing argument, the prosecutor remarked: "Defendant has simply opted to plead not guilty. I don't think all of this that's going on around me, by virtue of his plea of not guilty, he's insisting he knew nothing." Additionally, the prosecutor briefly compared Defendant's decision to plead not guilty with Garcia's decision to plead guilty, arguing that Defendant is "insisting he knew nothing" in contrast to Garcia who "acknowledged" and "admitted" his involvement in return for a deal to plead guilty. Defendant did not object to these remarks.

At the close of trial, the jury returned a guilty verdict. The trial court consolidated the trafficking by possession and conspiracy charges and sentenced Defendant to 175 to 222 months of imprisonment for those counts, and sentenced him to a consecutive 175 to 222 months of imprisonment for the trafficking by transportation count. Defendant timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear an appeal from a final judgment of a superior court, pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Analysis</u>

On appeal, Defendant argues the trial court (A) prejudicially erred in allowing Detective Jasso, a lay witness, to opine that Garcia was a drug addict, and (B) erred in failing to intervene *ex mero motu* when the State improperly commented on Defendant's constitutional right to plead not guilty during closing argument. We

- 5 -

address each argument, in turn.

## A. Lay Witness

Defendant first argues the trial court abused its discretion and prejudicially erred in allowing Detective Jasso to testify that Garcia was a drug addict. We hold this argument is not preserved for our appellate review.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1).

Here, Detective Jasso gave the following relevant testimony concerning Garcia:

> Q. Okay. And when you spoke with [Garcia], tell me about your conversation with him. What if anything did you learn from him? What was reduced to report form?
>
> A. So, obviously, like many interviews – and I'll refer to [] Garcia as the perfect example – [] *Garcia is what I know to be in my training and experience an addict*. Someone who is addicted to cocaine, and, obviously, when encountering law enforcement, they become nervous or scared of the situation itself.
> . . . .
> [] Garcia told me that [Defendant] here had told him and invited him to this party in Danville, and that's where [] Garcia was believed and thought that they were going. And, obviously, because of my training and experience, I know that addicts or people addicted to this poison or this substance, are easily persuaded with, obviously this notion of being given narcotics, they would agree.
>
> MR. KOBRIN: Object.

THE COURT: Overruled. You can answer.

A: That these addicts would agree, and they would do things like [] Garcia would have done.

(Emphasis added).

Defendant argues Detective Jasso improperly testified as an expert witness by identifying Garcia as an "addict" and further testifying to his likelihood to be "easily persuaded" to attend a party where he may be given narcotics. Specifically, Defendant contends "[s]ubstance-related and addictive disorders are a recognized mental disorder" so a witness must be qualified as an expert to make this diagnosis and give this sort of testimony. He argues Detective Jasso was a lay witness and "did not have the proper expertise or foundation to make such a psychiatric diagnosis of Mr. Garcia." We note that Defendant's one-word objection follows about one- and one-half pages of Detective Jasso's answer to a question, and it is not entirely clear which portion of that answer the objection was directed to. But even if we generously assume Defendant's objection was directed to the portion of Detective Jasso's testimony noted above and addressed in Defendant's brief, including both his reference to Garcia as an "addict" and his tendency to be "easily persuaded," Defendant did not state any grounds for the objection at trial and made no argument at trial, either at this point or at any other time during the trial, regarding the ground he asserts on appeal. *See* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating

the specific grounds for the ruling the party desired the court to make if the specific grounds were *not apparent from the context*." (emphasis added)); *see also* N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection noted at trial . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."). Here, Defendant's claimed ground for the objection was not apparent from the context of the questioning and his objection. *See* N.C. R. App. P. 10(a)(1).

Defendant argues the ground for his objection was Detective Jasso's lack of qualification to testify as an expert witness on diagnosis of substance use disorders and the behavior of those who suffer from these disorders. Read in context, however, Detective Jasso's testimony was not giving an expert medical diagnosis of Garcia. In Detective Jasso's testimony leading up to the portion of testimony where Defendant made the one-word "objection," Detective Jasso described his law enforcement experience and training in narcotics investigations, his participation in the investigation which led to Defendant's arrest, the arrest of Defendant and the other men, and his interactions with Garcia after his arrest. Detective Jasso was referring to Garcia as a person addicted to cocaine based on all the things he observed during the incident. In addition, Garcia himself testified and admitted that he was a habitual cocaine user, and that at the time of the incident, his "mentality" was "like oh yeah, free drugs, free alcohol, let's go, why not?"

Defendant's objection was not sufficiently specific to preserve his argument

regarding Detective Jasso's testimony for anything other than plain error review.

Our Supreme Court has explained the rationale for this requirement:

> The specificity requirement in Rule 10(a)(1) prevents unnecessary retrials by calling possible error to the attention of the trial court so that the presiding judge may take corrective action if it is required. Moreover, a specific objection discourages gamesmanship, and prevents parties from allowing evidence to be introduced or other things to happen during a trial as a matter of trial strategy and then assigning error to them if the strategy does not work[.]" Practically speaking, Rule 10(a)(1) contextualizes the objection for review on appeal, thereby enabling the appellate court to identify and thoroughly consider the specific legal question raised by the objecting party. N.C. R. App. P. 10 drafting committee note, cmt., para. 2, reprinted in 287 N.C. 698, 700-01 (1975) ("After an objection at trial, the fact that error will be asserted on appeal in respect of particular judicial action must be noted in the record on appeal, first for the benefit of the adverse party, then for the reviewing court.").

*State v. Bursell*, 372 N.C. 196, 199 (2019) (citation modified).

Defendant has not requested plain error review of this issue and has therefore waived plain error review. *See State v. Dawkins*, 265 N.C. App. 519, 525 (2019) ("By failing to 'specifically and distinctly' argue that the purported error amounted to plain error, [the d]efendant has waived plain error review."); *see also State v. Frye*, 341 N.C. 470, 496 (1995) (holding the defendant "waived appellate review of [unpreserved] arguments by failing specifically and distinctly to argue plain error").

Accordingly, Defendant's argument regarding Detective Jasso's testimony was not preserved for our appellate review. *See* N.C. R. App. P. 10(a)(1), (4).

**B. Closing Argument**

Defendant next argues on appeal that the trial court erred in failing to intervene *ex mero motu* when the State improperly commented on Defendant's constitutional right to plead not guilty during closing argument. We disagree.

Defendant concedes he did not object to the State's closing argument, and thus our review is limited to determining "whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Goins*, 377 N.C. 475, 478 (2021) (citation and internal quotation marks omitted). This requires a two-step analytical inquiry: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial. Only when [this Court] finds both an improper argument and prejudice will this Court conclude that the error merits appropriate relief." *Id.* at 478 (citation omitted). The defendant "has the burden to show a reasonable possibility that, had the errors in question not been committed, a different result would have been reached at the trial." *Id.* at 478 (citation modified).

"When evaluating the prejudicial effect of an improper closing argument, we examine the statements in context and in light of the overall factual circumstances to which they refer." *Id.* at 479 (citation modified). This Court has routinely held that it is improper for a prosecutor to remark on a defendant's decision to plead not guilty and exercise his right to a trial by jury. *See State v. Goins*, 269 N.C. App. 618, 619 (2020), *writ allowed*, 374 N.C. 262 (2020)*, rev'd and remanded*, 377 N.C. 475 (2021);

*see also State v. Thompson*, 118 N.C. App. 33, 42 (1995).

In *Goins*, the defendant pleaded not guilty for assault with a deadly weapon on a law enforcement officer and attempted murder. 377 N.C. at 475, 479. A trial was held, and in closing arguments, the prosecutor made the following remarks without objection:

> [You m]ight ask why would [the defendant] plead not guilty? I contend to you that the defendant is just continuing to do what he's done all along, refuse to take responsibility for any of his actions. That's what he does. He believes the rules do not apply to him. [The defendant's] not taking responsibility today. There's nothing magical about a not guilty plea to attempted murder. He's got to admit to all the other charges. You see them all on video. The only thing that's not on video is what's in his head. He also knows that those other charges carry less time. There's the magic.

*Id.* at 477 (citation modified). After closing arguments, the trial court explained to the jury that "[the] defendant is presumed to be innocent, that when a defendant pleads not guilty he is not required to prove his innocence, and that the State must prove [the] defendant's guilt beyond a reasonable doubt." *Id.* at 481.

On appeal to this Court, we held the statements were improper and remanded for a new trial. *Goins*, 269 N.C. App. at 622. On appeal to our Supreme Court, the Court reversed, holding that although "the prosecutor's reference to [the] defendant's plea of not guilty was undeniably improper," "in the context of the entire closing argument[,] we cannot conclude that the prosecutor's use of this improper argument was so overreaching as to shift the focus of the jury from its fact-finding function to

relying on its own personal prejudices or passions[,]" nor "can we conclude that the mention of [the] defendant's choice to plead not guilty so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Goins*, 377 N.C. at 480 (citation modified). Additionally, our Supreme Court noted that "the judge's instruction to the jury effectively cured any error[,]" reasoning that "[t]he judge clearly instructed the jury on their role and made it clear that defendant is presumed to be innocent, that when a defendant pleads not guilty he is not required to prove his innocence, and that the State must prove [the] defendant's guilt beyond a reasonable doubt." *Id.* at 481.

Here, during closing arguments, the prosecutor remarked that "[t]he Defendant has simply opted to plead not guilty. I don't think all of this that's going on around me, by virtue of his plea of not guilty, he's insisting he knew nothing." The prosecutor also briefly compared Defendant's decision to plead not guilty with Garcia's decision to plead guilty, arguing that Defendant is "insisting he knew nothing[,]" in contrast to Garcia, who "acknowledged" and "admitted" his involvement in return for a deal to plead guilty.

While we find these remarks improper, as they discuss Defendant's right to a trial by jury, Defendant has failed to show that, had these remarks not been made, there is a reasonable possibility a different result would have been reached. *See id.* at 478. The jury heard overwhelming evidence Defendant was involved with trafficking cocaine, including that: Officers observed Defendant retrieve a bag from a

silver Kia, which Defendant later admitted to officers that the driver of the silver Kia delivered cocaine to Defendant; upon leaving Defendant's apartment with Defendant, Garcia carried a white bag with "LIMS" written in red containing a shoebox that had cocaine inside; Defendant and Garcia then entered a red Mercedes, which was subsequently stopped by the officers; officers testified that they found a half kilogram of cocaine in a shoebox that was in a bag in the red Mercedes, while they found another half kilogram of cocaine in a safe owned by Defendant at his apartment; and Defendant was wearing the same shoes depicted on the shoebox where the cocaine was found.

Additionally, like the trial court in *Goins*, the trial court here effectively cured this error when it instructed the jury that, "[u]nder our system of justice, when a defendant pleads not guilty, he is not required to prove his innocence. He is presumed to be innocent. The State must prove to you that [Defendant] is guilty beyond a reasonable doubt." 377 N.C. at 481. We therefore conclude the trial court did not err in failing to intervene during the State's closing argument.

## IV. Conclusion

Upon careful review, we conclude Defendant's first argument—that the trial court prejudicially erred in allowing Detective Jasso to testify that Garcia was a drug addict—is not preserved for our appellate review, and second, that the trial court did not err in failing to intervene *ex mero motu* where Defendant has not shown he was prejudiced by the State's improper comments made during closing arguments.

NO ERROR.

Judges STROUD and FREEMAN concur.

Report per Rule 30(e).